Howard G. DIXON, Homer Denno, Albino Zanchettin, Fred R. Harris, Joseph F. Walker, Arthur W. Rankin, Lehman H. Mengel, Karl G. Strickler, Plaintiffs,

v.

NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, Defendant and Third-Party Plaintiff,

v.

John B. DRAKE et al., Third-Party Defendants.

No. 4–66 Civ. 65.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 19, 1967.

Carlsen, Greiner & Law, by Ronald D. Olson, Minneapolis, Minn., for plaintiffs.

Faegre & Benson, By Wright W. Brooks, Minneapolis, Minn., for defendant and third-party plaintiff.

Dorsey, Marquart, Windhorst, West & Halladay, by Horace Hitch, Minneapolis, Minn., for John B. Drake, George M. Drake and George R. Drake, third-party defendants.

Rider, Bennett, Egan & Johnson, by Stuart W. Rider, Jr., Minneapolis, Minn., for third-party defendants D. P. Jesson and Venita O'Shaughnessy.

R. L. Van Fossen, Minneapolis, Minn., for third-party defendants Violet S. Cuffel and W. C. Nordstrom.

Henson & Webb, by Robert F. Henson, Minneapolis, Minn., for third-party defendants R. P. Bayard, H. S. Bixby, C. W. Borden, E. R. Gallagher and C. W. Victorson.

NEVILLE, District Judge.

Eight individuals have joined as co-plaintiffs to bring this action against defendant Northwestern National Bank of Minneapolis, premising federal jurisdiction upon the diversity provisions of 28 U.S.C. § 1332 (1964). Defendant moves to dismiss as to all but one of the plaintiffs alleging that seven of them independently fail to satisfy the $10,000.00 jurisdictional minimum prerequisite, conceding however that all plaintiffs meet the diversity requirement.

The complaint in the action asserts that defendant Northwestern National Bank, the trustee under an employees' profit sharing trust, improperly used the trust funds to buy and to invest in worthless preferred stock of the allegedly insolvent employer, Johnson, Drake & Piper, Inc. Defendant Northwestern National Bank has answered on the merits denying any wrongful action on its part; further it claims that any and all investments made by it were under the mandatory directions and authorization of a "Profit Sharing Committee" composed of some seven employees of the employer-trustor; that as trustee it had in this matter no discretion; and that in addition by the very terms of the trust instrument it was previously exculpated.

The present motion does not involve a determination on the merits. Defendant has entered a counterclaim against plain-

tiff Howard G. Dixon, Sr., and, acting in the capacity of a third-party plaintiff, claims by a proper pleading that in the event of ultimate liability on its part a right of indemnity exists against several third-party defendants as members of the Johnson, Drake & Piper, Inc. "Profit Sharing Committee".

Plaintiffs are past employees of the Johnson, Drake & Piper, Inc. construction firm. In an agreement originally dated December 22, 1942, the employer Johnson, Drake & Piper, Inc. entered into an "Employees' Profit Sharing Trust Agreement". Thereafter this instrument was amended on several occasions. The last major revision occurred December 17, 1954, at which time defendant Northwestern National Bank was installed as successor trustee under the amended agreement. Plaintiffs allege rights as beneficiaries of this trust agreement and press their action against the defendant in its capacity as trustee.

On differing dates between December 30, 1963, and January 19, 1965, the various plaintiffs left the employ of Johnson, Drake & Piper, Inc. As beneficiaries of the trust each received certain cash and stock distributions pursuant to the terms of the trust instrument. The stock distributions consisted of shares of $100.00 par value, 4% preferred stock of Johnson, Drake & Piper, Inc. Of the 458 shares of stock in the employer company distributed to the plaintiffs herein over that period as their pro rata shares of the total trust assets, the number respectively received were as follows:

| Name | Shares | Name | Shares |
|------|--------|------|--------|
| Dixon | 243 | Walker | 3 |
| Denno | 48 | Rankin | 69 |
| Zanchettin | 28 | Mengel | 14 |
| Harris | 14 | Strickler | 39 |

While the cash amounts received by these individuals are not relevant to the present inquiry, substantial sums accompanied the stock distributions, apparently in identical proportionate shares. Plaintiffs allege in their complaint that the aforementioned stock is presently owned by them as its recipients.

It is contended by plaintiffs that the defendant bank, as trustee, purchased 3,450 shares of stock of the described nature on or about May 25, 1962, including the 458 shares involved herein, from Johnson, Drake & Piper, Inc. when it was substantially insolvent and that the acquired shares were thus worthless. Furthermore, plaintiffs allege that approximately $320,000.00 of the $345,000.-00 purchase price was thereafter applied by Johnson, Drake & Piper, Inc. to reduce its indebtedness to the defendant Northwestern National Bank in its capacity as a major creditor and that the bank acted maliciously, in bad faith and with reckless indifference to the rights of the beneficiaries of the trust in thus reducing the indebtedness. It is thus contended that the defendant purchased this stock knowing it was valueless or nearly so due to the insolvency of the corporation and intending to benefit directly from the purchase through reduction of its outstanding credit to the insolvent firm. The aforementioned distributions, occurring subsequent to the contested purchase, allegedly were conducted with like bad faith, maliciously and in reckless indifference, of the rights of the recipients and in breach of its fiduciary duty. Having set forth the foregoing factual circumstances, the plaintiffs in their complaint demand judgment against the defendant in two lump sums of $45,800.00 compensatory and $250,000.00 punitive damages. No individual prayers for relief are set forth in the complaint, there being but the one prayer for the above round amounts.

In support of its motion to dismiss, defendant appears to rely upon three principles of federal jurisdiction. (1) Defendant submits that the instant action is not a Rule 23 class action under the Federal Rules of Civil Procedure and the plaintiffs are therefore foreclosed from using the total $345,000.00 purchase price to determine the "amount in controversy". Indeed, plaintiffs seem not to contest this position. (2) Defendant argues that the plaintiffs in this action cannot aggregate their individual and separate claims to achieve the $10,000.00 minimum. (3) Defendant urges that the claim for punitive damages in the sum of $250,000.00 cannot be added to the alleged actual damages because punitive damages are not recoverable in the present action which it claims to be an equity action under the applicable Minnesota state law. Plaintiff suggests that punitive damages were alleged only for purposes of bringing plaintiffs' lawsuit within the jurisdiction of this court. Each of these contentions merits individual comment.

■ (1) This lawsuit is not within the provisions of Rule 23 of the Federal Rules of Civil Procedure relating to class actions. The plaintiffs have not purported to come within its terms nor assume a representative status; nowhere in their complaint do plaintiffs seek relief on behalf of others similarly situated nor a restoration of the total $345,000.00 allegedly improperly disbursed by the defendant trustee. Thus, since class action rules are not involved, the court need neither ascertain the applicability of Rule 23 as recently amended in June, 1966, to the instant facts nor consider the amendment's effect on previously existing aggregation principles. It may be noted, however, that post-amendment decisions apparently find that the amendment to Rule 23 did not effect a change in the so-called aggregation principles in class action circumstances. See Alvarez v. Pan Am. Life Ins. Co., 375 F.2d 992 (5th Cir. 1967); Snyder v. Harris, 268 F.Supp. 701 (E.D.Mo.1967).

■ (2) This court holds that plaintiffs' claims can be aggregated in this case. Defendant bank urges, which is undoubtedly true, that the plaintiffs have totalled their damage claims to achieve the lump sum of $45,800.00 compensatory damage claimed in their complaint. This is claimed to be contrary to well established aggregation principles and that on a pro rata basis seven of the eight plaintiffs seek relief below the $10,000.00 minimum. Defendant, assuming resolution of the punitive damage issue in its favor, therefore submits that these plaintiffs are subject to dismissal for want of federal jurisdiction.

■ The rule is well settled that a mere allegation of damages over the jurisdictional minimum in the complaint will not confer jurisdiction upon the federal courts under 28 U.S.C. § 1332 when plaintiffs are individually required to establish jurisdiction. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). When some plaintiffs fall below the minimum and their claims cannot be aggregated, proper disposition requires their dismissal, irrespective of whether all plaintiffs fail to satisfy the requirement, as in Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Hughes v. Encyclopaedia Britannica, 199 F.2d 295 (7th Cir. 1952), or only some of them as in Clark. v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Hackner v. Guaranty Trust Co., 117 F.2d 95 (2d Cir.), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941). The mere fact that one of many plaintiffs satisfies the minimum has been held not to permit retention of the other claims in federal court unless under some established principle of law their claims can be aggregated. The grant of diversity jurisdiction is said to demand strict construction. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Eagle Star Ins. Co. v. Maltes, 313 F.2d 778 (5th Cir. 1963). The burden is on the plaintiffs to show jurisdiction by competent proof in seeking to invoke the federal forum when the juris-

dictional question is asserted by the defendant. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14 (8th Cir. 1964).

The traditional aggregation rule early was promulgated and applied by the Supreme Court in Shields v. Thomas, 58 U.S. (17 How.) 3, 15 L.Ed. 93 (1854). As subsequently developed it is epitomized by the statement in Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911), where the court said:

> "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title. *or right,* in which they have a *common and undivided interest,* it is enough if their interest collectively equal the jurisdictional amount. 222 U.S. at 41, 32 S.Ct. at 9 (emphasis added)."

As so stated, the rule later has been preserved in numerous Supreme Court decisions. See, e. g., Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883 (1920); Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916). The Eighth Circuit Court of Appeals took cognizance of this principle recently in Hedberg v. State Farm Mut. Automobile Ins. Co., 350 F.2d 924 (8th Cir. 1965); and earlier in Division 525, Order of Ry. Conductors v. Gorman, 133 F.2d 273 (8th Cir. 1943). Otherwise stated, the test is whether the plaintiffs have a "joint interest" or a "common and joint right" in the requested relief. See Hedberg v. State Farm Mut. Automobile Ins. Co., supra, at 931; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Eagle Star Ins. Co. v. Maltes,

313 F.2d 778 (5th Cir. 1963). The difficulty of course lies in determining what is "common" and "joint" within the meaning of the court decisions.

There are many cases discussing the question of aggregation to meet the federal jurisdictional amount. Judge Blackmun of the Eighth Circuit Court of Appeals in one opinion alone cites 35 or more prior court adjudications. See *Hedberg,* supra. Both counsel in their briefs together have cited about half this number relating to this question. Difficult it is to draw a general rule or a rationale from the decisions other than the broad rules stated above. Language to support either conclusion in a case such as the present one can be found.

The court has not found any case exactly on all fours with the case at bar. It is worth noting that prior to the amendment of July 1, 1966, to Rule 23 of the Federal Rules of Civil Procedure, there existed what were known as "true" class actions, "hybrid" class actions and "spurious" class actions. Perhaps the same concepts do not still exist under the different and new wording of Rule 23. Without deciding that question, however, for purposes of federal court jurisdiction, the total sum involved in a "true" class action was used to measure the amount in controversy for purposes of federal jurisdiction. Generally aggregation was not permitted in the other two classifications. Despite the above cited well established general principles applicable to many of the cases, the court holds that on its facts the instant case does not come within these rules but is a "common" and "joint" right or interest and aggregation will be permitted. Under Rule 23, either before or after amendment, had the present action been instituted antedating the time that the defendant trustee made distribution of shares of stock to any of the eight plaintiffs, it seems quite clear such could have brought as a "true" class action. Defendant's purchase of the 3,450 shares of stock could have been so challenged by any beneficiary who might have instituted suit for the benefit of all. Such

would be similar to a shareholders' derivative action, involving a common question of fact and law with a single recovery which would inure to the benefit of the various shareholders (beneficiaries here) in proportion as their ownership (interest here) might appear. The sum to be recovered, if the case were to be established on the merits, would go into the corporate treasury (here into the trust estate). Clearly at this stage the claims of plaintiffs were "common" and "joint" in the very true sense and the amount involved, even for the eight plaintiffs here suing exceeded the jurisdictional amount.

It does not seem to the court that the situation has differed or changed so as to lose the concept of "joint" or "common" merely because this action was not brought until after distribution of the allegedly worthless stock to the eight plaintiffs, nor by the fact that these eight plaintiffs are the only ones now suing and others are not. The factual and legal questions are the same.

The Eighth Circuit Court of Appeals has held that the beneficiaries of a trust fund are "jointly" interested in the right to proper trust administration. For example, Citizens Banking Co. v. Monticello State Bank, 143 F.2d 261 (8th Cir. 1944), where plaintiffs, holders of collateral trust notes, brought a class action against the indenture trustee alleging a breach of trust. Plaintiffs claimed the right to an accounting, distribution and damages, among other incidental relief. The court stated the plaintiffs were members of "a single trust fund in which no noteholder has a particular or separate interest but in which the interest is common and undivided with rights only of pro rata participation". 143 F.2d at 264. The suit was thus for vindication of a joint claim and a class action under old Rule 23(a).

Likewise, in Redmond v. Commerce Trust Co., 144 F.2d 140 (8th Cir.), cert. denied, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944), the court held that the plaintiff could maintain a Rule 23(a) class action when jointly interested as a beneficiary of an indenture trust. There the court said that "[t]his petition is based upon a common and undivided obligation and liability—the preservation and proper distribution of a trust fund wherein all beneficiaries are interested in preservation of the fund and none can have legal standing to seek its distribution other than in accord with the trust indenture". 144 F.2d at 151. *Redmond* and *Citizens Banking* quite clearly show that trust beneficiaries are jointly interested in their trust fund when they share on a liquidated pro rata basis. Other federal court decisions are in accord on this point. See Miller v. National City Bank of New York, 147 F.2d 793 (2d Cir. 1945); Boesenberg v. Chicago Title & Trust Co., 128 F.2d 245, 141 A.L.R. 565 (7th Cir. 1942). But see, contra, Atwood v. National Bank of Lima, 115 F.2d 861 (6th Cir. 1940). Aside from *Atwood,* in each of the above decisions holding that the beneficiary's claim was joint, the right to recover depended primarily upon issues concerning the proper trust administration. It should also be noted that the Eighth Circuit has held that employees are jointly interested in a right to contractual benefits negotiated with an employer in one contract. Division 525, Order of Ry. Conductors v. Gorman, 133 F.2d 273 (1943).

A so-called "spurious" class action, where aggregation for federal jurisdictional purposes might well be denied typically arises in mass accident cases where a number of people are injured or killed on a train, school bus, or airplane, for instance. There, even though a common fact question might be involved, each individual's recovery differs, depending upon the type and amount of injury, length of the treatment or, if deceased, whether or not dependents survive. In these cases aggregation to meet jurisdictional limits is doubtful.

Since however the case at hand at one stage might have been a "true" class action, the court does not believe that for purposes of aggregation it has lost its characteristic as "common" or "joint". Particularly is this so where

the individual recoveries here, if any, are measured by the proportional number of shares owned by each. The amount per share is liquidated—$100 per share— and the amount allocable to each plaintiff varies only on a mathematical formula consonant with his identifiable proportional interest in the trust; even as if a recovery had been made into the trust estate in a "true" class action it would inure to the various beneficiaries in the proportion that their interests bear to each other. The rationale relative to differing individual recoveries thus seems not to apply in this case.

It is noted that plaintiffs claim pursuant to a single instrument—the trust agreement between Johnson, Drake & Piper, Inc. and Northwestern National Bank. The alleged defalcation took place during the regular administration of that trust. Plaintiffs are each interested in establishing the identical breach of trust. There is only one fund involved. The fact that plaintiffs seek pro rata shares thereof flows logically and alone should not defeat aggregation.

Merely permitting aggregation, of course, does not bar defendant from presenting specific defenses, if any it has, against particular plaintiffs.

The court is not unaware of an additional body of case law which under a somewhat expanding concept of ancillary jurisdiction permits retention in the federal court of claims of plaintiffs which are under the jurisdictional minimum when such plaintiffs are joined properly with at least one plaintiff who seeks more than the $10,000.00 prerequisite. This doctrine is set forth and discussed in a Note, The Federal Jurisdictional Amount Requirement and Joinder of Parties under the Federal Rules of Civil Procedure, 27 Ind.L.J. 199 (1952). Other recognized authority supports this position. See Wright, Federal Courts § 36 (1963):

"The contrasting cases from the Fourth and Tenth Circuits just discussed raise also an additional, and vexing, problem of jurisdictional amount where multiple parties are involved. Suppose that one party has a claim for more than $10,000. Another party has a claim against the same defendant for less than $10,000, and his claim is technically "separate and distinct" though it is so closely related to the first party's claim that, as a matter of efficient judicial administration, they should be heard jointly. On these facts can the federal court hear the claim of the second party, when joined with that of the first party? This is a more appealing case for aggregation than the situations, heretofore considered, where no one of the individual claims satisfies the statute. In those other situations refusal to permit aggregation means that all the claims must be brought in state court where, presumably, they can be joined or otherwise conveniently tried. But in the situation now considered, the party with the claim for more than $10,000 has a statutory right to assert his claim in federal court, and if aggregation is not permitted, the party with the smaller claim must bring a wasteful independent suit in state court. The commentators have thought that in these circumstances the two parties should be permitted to join, with the larger claim satisfying the statutory requirement of jurisdictional amount for the entire suit and the smaller claim coming within the court's ancillary jurisdiction. The Fourth Circuit in the case described above accepted this analysis as an alternative ground for upholding jurisdiction, and there is some other authority which points in the same direction. The weight of authority is to the contrary, however, though the matter has not been definitively resolved."

While this line of reasoning is presently contrary to the weight of authority, see, e. g., Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), recently several courts have adopted either explicitly or impliedly this new concept. See Johns-Manville Sales Corp. v. Chicago Title & Trust Co.,

261 F.Supp. 905 (N.D.Ill.1966); Morris v. Gimble Bros., Inc., 246 F.Supp. 984 (E.D.Pa.1965); Lauf v. Nelson, 246 F. Supp. 307 (D.Mont.1965); Orn v. Universal Automobile Ass'n of Indiana, 198 F.Supp. 377 (E.D.Wis.1931); Raybould v. Mancini-Fattore Co., 186 F.Supp. 235 (E.D.Mich.1960). These courts tend to ignore the traditional concept of "joint" or "common" claims in aggregation analysis, and have looked rather to the practicalities of the lawsuit involved. When substantially identical proof will support the claims of all, it is felt that retention of the smaller claim in federal court prevents conflicting results in the state courts and since the burden on the federal courts is not substantially increased, it is judicially economical to try the claims together. In *Johns-Manville,* supra, the court, Chief Judge Campbell, said, 261 F.Supp. at p. 907:

> " * * * The jurisdictional amount requirement, as most limitations on federal jurisdiction, was intended to reduce the burden on federal courts and to avoid further encroachments on state courts. These purposes are in no way disserved by retaining the additional plaintiff in this case. This court must try this case in its entirety, with or without the presence of the additional plaintiff. Inclusion of the additional plaintiff's claim could in no way substantially increase the burden of this court in this case. Secondly, rather than being an encroachment, the disposition of this claim would be a service to the generally overburdened state court. The state * * * would be relieved from trying the lesser of two identical claims.

Basically law is common sense. Paraphrasing the late Chief Justice of the United States Supreme Court, Edward Douglass White, whenever a rule of law does not make common sense it should not be followed. It is unthinkable under our present advanced state of judicial administration to require the same case be tried separately in two different courts. Duplicitous expenses and an unjustifiable imposition on an already overtaxed judicial system run contrary to recent advancements in legal rules of procedure—most notably our own model Federal Rules of Civil Procedure."

■ In the instant lawsuit, the theory of ancillary jurisdiction has considerable merit. Here, the plaintiffs' claims are identical insofar as proof of the trustee's illegal activity is concerned. This issue is the only substantial issue of fact and law before the court. Mr. Dixon, Sr. has clearly and concededly pleaded the jurisdictional amount sufficient to invoke the powers of this court. Remitting the other plaintiffs to the state courts would cause needless duplicity of trials and proof, while their retention here will not alter the basic nature of the lawsuit or result in a substantial increase in the evidence submitted. The court, therefore, also holds as an alternative to its decision on aggregation discussed above, that the seven plaintiffs in this case who fail to seek recovery exceeding the jurisdictional minimum (assuming no punitive damages were possible herein) come nevertheless within the federal court's ancillary jurisdiction.

(3) In view of the holding above, it is not necessary to decide whether the claim for punitive damages in the lump amount of $250,000.00 can be added to the alleged actual damages for jurisdictional purposes. Defendant claims this action is one in equity and punitive damages are thus not recoverable under the applicable Minnesota state law. Plaintiffs, on the other hand, assert that punitive damages are properly recoverable in a suit against a trustee for an intentional breach of trust done with a malicious intent, and that cumulation of the actual and punitive damages sought in this suit satisfies the jurisdictional minimum under 28 U.S.C. § 1332.

■■ It is well settled that punitive damages may be added to actual damages to attain the jurisdictional minimum. Bell v. Preferred Life Assur. Soc'y, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Davenport v. Mut. Benefit Health & Acc. Ass'n, 325 F.2d 785 (9th Cir. 1963);

Young v. Main, 72 F.2d 640 (8th Cir. 1934) (dicta); 1 Moore, Federal Practice, Par. 0.93[4] (2d ed. 1964). But such punitive damages may not be added to actual damages when their recovery is impossible to a legal certainty under the applicable state law. Bell v. Preferred Life Assur. Soc'y, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Hedberg v. State Farm Mut. Automobile Ins. Co., 350 F.2d 924 (8th Cir. 1965); Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14 (8th Cir. 1964). Since under the diversity grant this court applies the law of the state in which it sits, Minnesota law must be examined to determine whether punitive damages are recoverable.

■ As a general rule in Minnesota, punitive or exemplary damages are granted only for conduct which is malicious, wilful or in reckless disregard of the rights of others. Benson Coop. Creamery Ass'n v. First District Ass'n, 151 N.W.2d 422 (Minn.1967); Kirschbaum v. Lowrey, 165 Minn. 233, 206 N.W. 171 (1925); 5B Dunnell's Minn. Dig. § 2540 (3d ed. 1966). Plaintiffs seemingly have come within this rule so far as the allegations in their complaint. There is however a paucity of Minnesota authority on the propriety of punitive relief in suits of this nature. Authorities elsewhere appear to lend some support to plaintiffs' view. See Sharts v. Douglas, 94 Ind.App. 201, 163 N.E. 109 (1928); Rivero v. Thomas, 86 Cal.App. 2d 225, 194 P.2d 533 (1948). Cf. Neel v. Clark, 193 S.C. 412, 8 S.E.2d 740 (1940). In Minnesota, *Benson,* supra, is an equitable suit where, it can be argued, the court by implication indicated that under different facts and proper proof, punitive relief might be granted. In the case at bar it may well be that a court cannot say, on the pleadings only and without a trial and a full knowledge and examination of all of the facts, that recovery of punitive damages is "impossible to a legal certainty". The court does not, however, need to base its de-

cision on this ground and so does not do so. A separate order has been entered and filed denying defendant Northwestern National Bank's motion to dismiss as to seven of the plaintiffs herein in accordance with this memorandum.