**Roxanne Schoen BRANDT, Plaintiff,**

v.

**OWENS–ILLINOIS, INC., Defendant.**

**No. 72 Civ. 3003.**

United States District Court,
S. D. New York.

Aug. 27, 1973.

Supplemental Opinion Jan. 10, 1974.

Laventhall & Zicklin, New York City, for plaintiff.

Shea, Gould, Climenko & Kramer, New York City (Jesse Climenko, Michael Lesch, New York City, of counsel), for defendant.

Pollack & Singer, New York City (Barry H. Singer, Martin I. Kaminsky, Richard M. Asche, New York City, of counsel) for plaintiff in 73 Civ. 3383.

BAUMAN, District Judge.

Plaintiff, Roxanne Brandt, commenced this action on her own behalf and on behalf of other 4% cumulative preferred shareholders of Owens-Illinois, Inc. to recover for alleged violations of the securities laws and to compel Owens-Illinois, Inc. ("Owens") to properly employ a purchase fund [1] established for the benefit of its 4% cumulative preferred shareholders ("preferred shareholders") Presently before the court is a motion by the plaintiff for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure designating this a class action.

The complaint alleges that Owens has repeatedly violated Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C. F.R. § 240.10b–5, by falsely representing to its shareholders that it is in full compliance with the purchase fund provi-

---

[1]. Division I, Section D, of the Amended Articles of Incorporation of Owens-Illinois, Inc. establishes a Purchase Fund for the benefit of its 4% cumulative preferred shareholders. In pertinent part it provides that:

"*Purchase Fund.* The Preferred Shares shall be entitled to the benefit of a Purchase Fund, the amount thereof and the terms and provisions relative to the operation thereof to be as follows:

1. On or before the first day of May in each year, commencing with May 1, 1962 (each such date being hereinafter called the Purchase Fund Instalment Date), so long as any Preferred Shares shall be outstanding, the Corporation shall set apart on its books, to the extent of its assets legally available therefor, as a Purchase Fund for the Preferred Shares, $2,000,000 (said amount being hereinafter called the Purchase Fund Instalment) . . .

\* \* \* \* \*

3. All amounts set apart for the Purchase Fund shall be applied by the Corporation from time to time as soon as reasonably practicable after the setting apart thereof, in the order in which such amounts are set apart, to the purchase of Preferred Shares, if obtainable, in the open market, at the best prices obtainable by the Corporation, but at a cost not to exceed $100. per share plus commissions, taxes and other incidental costs of acquisition."

sions of its articles of incorporation.[2] Plaintiff charges that, as a result of these false and misleading statements, the market price for the preferred shares was and continues to be "artificially deflated". The complaint also sets out a cause of action for breach of contract with jurisdiction predicated upon diversity of citizenship. In this count, plaintiff alleges that Owens breached its obligations to its preferred shareholders by failing to effect purchases of preferred shares in the manner provided by its articles of incorporation.

Plaintiff seeks to represent two overlapping subclasses which correspond to her two causes of action. The first consists of all persons who purchased preferred shares after February, 1969, the period during which the first false and misleading statement was published; the second consists of all preferred shareholders.

The defendant has vigorously denied all of plaintiff's allegations and submitted two lengthy memoranda in opposition to her class action motion. Unfortunately, most of its arguments are premised on the view that the merits of plaintiff's claims have a substantial bearing on this motion. Thus, fully two-thirds of its memoranda are devoted to an attempt to demonstrate that there is no possibility that plaintiff could prevail on either of her claims and that "it would be an unjustified and expensive burden on the judicial system to permit the action to be maintained as a class action."

Our Court of Appeals, however, has recently rejected this approach and barred inquiry into the merits in determining the propriety of a class action. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2nd Cir. 1973), reh. en banc denied, May 24, 1973, (Eisen III). In adopting this view, the Court followed the authorities in this and other circuits which reject the concept of the preliminary hearing on the merits, the so-called "mini hearing." See e. g., Halverson v. Convenient Food Mart, Inc., 458 F.2d 927, 932 (7th Cir. 1972); Miller v. Mackey International, Inc., 452 F.2d 424, 429 (5th Cir. 1971); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Fogel v. Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.D.N.Y.1969); Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 469 (S.D.N.Y. 1968). But see Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968). It specifically approved the following language of Miller v. Mackey International, Inc., supra:

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." 452 F.2d at 427.

---

2. It is alleged that in Owens' annual report for 1968, and in each of its subsequent annual reports and corporate statements, it falsely and deceptively represented that it had complied with the purchase fund provisions of its articles of incorporation. As an example of this deception plaintiff cites Owens' Annual Report to Shareholders of the Company for the fiscal year ending December 31, 1970 which states that:

"Owens-Illinois is obligated to set aside on May 1 of each year $2 million for use in the following 12 months to purchase preferred shares, if obtainable, in the open market, at the best prices obtainable, but at a cost not to exceed $100 a share plus costs of acquisition. If any portion of a purchase fund is not so expended during the 12 months following the date set aside, the balance will be available for general corporate purposes."

For reasons which will appear later in this opinion, it is unnecessary to evaluate the merits of plaintiff's contentions. However, it can be noted that the underlying facts are not in dispute. Owens concedes that it has not exhausted a purchase fund instalment since 1968 and that there were preferred shares available at less than $100 per share during this period.

■ ■ From this I conclude that a suit may be properly designated a class action even though the complaint fails to state a cause of action and may subsequently be dismissed. See Miller v. Mackey International, Inc., supra, at 427; Kahan v. Rosenstiel, supra, 424 F. 2d at 169. My inquiry therefore excludes a consideration of the merits as to which I express no view and is limited to whether or not the requirements of Rule 23 have been satisfied.

To be maintainable as a class action a suit must meet all the requirements set forth in Rule 23(a)[3] and also satisfy the requirements of one of the three subsections of Rule 23(b).[4]

I. *The Prerequisites of Rule 23(a).*

a) *The Class Shall be so Numerous that Joinder of all Members is Impracticable.*

■ Though plaintiff has not specified the exact number of people in the subclasses she purports to represent, they have been defined with some precision. Cf. Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966). Since each subclass consists of hundreds, if not thousands,[5] I am satisfied that the nu-

---

3. Rule 23(a) provides:
   "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

4. Rule 23(b) provides:
   "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   (1) the prosecution of separate actions by or against individual members of the class would create a risk of
   (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

5. The cumulative preferred shares of defendant were publicly traded on the New York Stock Exchange throughout the period in question. As of September 8, 1972 there were 176,823 preferred shares outstanding, held by 2,188 persons. (Morehead Affidavit ¶ 2).
   Defendant, relying on Zahn v. International Paper Co., 469 F.2d 1033 (2nd Cir.), reh. denied, 469 F.2d 1040, cert. granted, 410 U. S. 925, 93 S.Ct. 1370, 35 L.Ed.2d 585 (1972), contends that the second subclass can contain no more than 55 members. Even if it is correct, I am not prepared to hold, at this stage of the proceedings, that the breach of contract claim should not proceed as a class action. See Citizens Banking Co. v. Monticello State Bank, supra; Fidelis Corp. v. Litton Industries, supra. Cf. Almenares v. Wyman, 453 F.2d 1075 (2nd Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

merosity requirement of Rule 23(a) has been met. See Esplin v. Hirschi, 402 F. 2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969) (class of over 200 securities purchasers sufficiently numerous); Citizens Banking Co. v. Monticello State Bank, 143 F.2d 261, 264 (8th Cir. 1944) (class of 40 note holders held sufficiently numerous); Fidelis Corp. v. Litton Industries, 293 F.Supp. 164 (S.D.N.Y. 1968) (35 stockholders constitute a class in a securities fraud case).

b) *There are Questions of Law or Fact Common to the Class.*

■ ■ This precondition is plainly satisfied because the failure of Owens to effect purchases of preferred shares in the manner provided by the articles of incorporation is a matter of concern to all shareholders. Moreover, with respect to the 10b–5 claim, I reject defendant's argument that each person injured must show that he personally relied on the misrepresentations and omissions and that any common issues of misrepresentation do not predominate over individual questions of reliance. The short answer is that proof of reliance may no longer be a prerequisite to this type of 10b–5 case. See Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741, reh. denied, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692; 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2nd Cir. 1973). However, even if the defendant is correct in its assertion of the need for proof of reliance, the recent trend has been to allow class actions to proceed to a determination on the common questions and then to require individual proof on the remaining issues. See e.

g., Green v. Wolf Corporation, supra, 406 F.2d at 301; Esplin v. Hirschi, supra; Donson Stores v. American Bakeries Company, 58 F.R.D. 485, 489–490 (S.D.N.Y.1973); Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y. 1968). Finally, since this case involves a single pattern of misrepresentation it is peculiarly appropriate for class action treatment.[6] See Korn v. Franchard Corporation, 456 F.2d 1206, (2nd Cir. 1972).

c) *The Claims or Defenses of the Representative Parties Are Typical of the Claims or Defenses of the Class.*

■ For a claim to be typical of the claims of the class, the representative of the class must have interests compatible with and not antagonistic to or in conflict with those of the class which he seeks to represent. Green v. Wolf Corp., supra, 406 F.2d at 299; Ruggiero v. American Bioculture, Inc., 56 F.R.D. 93, 95 (S.D.N.Y.1972); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969). Here, if plaintiff successfully establishes the facts regarding the defendant's conduct as she has alleged and the law as she interprets it, she will have advanced those claims which are typical of the members of the two subclasses she seeks to represent. Furthermore, I find no interests of the plaintiff in the maintenance of this action which are inimical to those of the class members.

d) *The Representative Party Will Fairly and Adequately Protect the Interests of the Class.*

Rule 23(a)(4) implicitly refers to both the representative parties and their attorneys when it speaks of adequate protection of the interests of the class. See Bernfeld, Class Actions and Federal

---

6. In the typical case, the court is confronted with a number of alleged misrepresentations and asked to determine whether a single plaintiff can represent all those allegedly affected. See e. g. Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); Unicorn Field, Inc. v. The Cannon Group, 60 F.R.D. 217 (S.D.N.Y.1973).

Securities Laws, 55 Cornell L.Rev. 78, 82 (1969). Thus, in Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2nd Cir. 1968) (Eisen II), the Court of Appeals stated:

> ". . . an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class."

In this case, there are no indications that plaintiff's attorneys do not satisfy these requirements or that plaintiff will fail to prosecute the case vigorously.

## II. *The Prerequisites of Rule 23(b)*.

Though plaintiff maintains that this action is properly maintainable under each subdivision of Rule 23(b), I have determined that the action is most appropriately brought under the provisions of Rule 23(b)(3). Since the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Indeed, the type of allegations contained in this complaint are particularly suited for treatment as a class action under Rules 23(a) and 23(b)(3). See generally, *Eisen III,* supra; Green v. Wolf Corporation, supra; Esplin v. Hirschi, supra.

I therefore find that this action may be maintained as a class action. Plaintiff is directed to give individual notice of the pendency of this action by first class mail to the members of each subclass [7] who can be identified through reasonable effort. *Eisen III,* supra; *Eisen II,* supra.

The parties are directed to settle an order incorporating an appropriate form of notice within 10 days.

So ordered.

### SUPPLEMENTAL OPINION

On August 27, 1973, I filed an opinion declaring this a class action and directing the settlement of an order incorporating an appropriate form of notice to the class. On October 12, 1973, after competing orders had been submitted but not yet signed, I received a letter from attorneys for the plaintiff in Laufer v. Owens-Illinois, Inc., 73 Civ. 3383, requesting that the signing of the order be deferred until the relationship between the *Laufer* and *Brandt* actions could be clarified.[1] After ascertaining that the *Laufer* action was in all material respects identical to the second cause of action, i. e., that alleging breach of contract, of the *Brandt* complaint, I accepted the transfer of the case from Judge Weinfeld, before whom it was then pending. I then held a conference in which the attorneys in both actions participated, and further briefs were filed by attorneys for Brandt and Laufer.

The narrow question before me is whether the *Laufer* attorneys should be designated the representatives of the second subclass in the *Brandt* action or, as they phrase it, whether the *Laufer* action should be designated the vehicle for prosecuting the claims set forth in the second cause of action in *Brandt*. The *Laufer* attorneys put forth several reasons in support of this solution; all, however, appear to flow from my previous determination that *Brandt* was

---

7. Though I have designated two subclasses pursuant to Rule 23(c)(4)(B), I do so with the provisions of Rule 23(d) firmly in mind. Therefore, if it becomes necessary or desirable to alter or amend this order I shall do so.

1. The *Laufer* attorneys claimed that they had been first informed of the pendency of the *Brandt* action on October 5, 1973, although the *Brandt* action had been commenced on July 14, 1972.

maintainable as a class action pursuant to Rule 23(b)(3) of the Federal Rules. The *Laufer* action, it is argued, can be maintained as a Rule 23(b)(2) class action, thereby entailing several significant benefits for the holders of the 4% cumulative preferred shares of Owens-Illinois. First, aggregation of claims is not permitted in a (b)(3) class action, Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and thus the only members of the second *Brandt* subclass are those whose holdings equal or exceed $10,000. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), affirming, 469 F.2d 1033 (2nd Cir. 1972). As I noted in footnote 5 of my previous opinion, only 55 of the 2,188 preferred shareholders would meet this jurisdictional minimum. The *Laufer* attorneys contend that if theirs is designated a (b)(2) class action, aggregation will be permitted and all Owens-Illinois shareholders will be represented. Second, they point out that notice is required in a (b)(3) action but not in one maintained under (b)(2), and thus the *Laufer* class would be spared the expense and delay of notice. Third, they contrast the simplicity of their contractual claim with the complexity of the first cause of action in *Brandt*, which is bottomed on Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. The latter will require extensive pretrial discovery as well as a lengthy trial on the usual questions of fraud, materiality, *scienter*, reliance, and damages. The *Laufer* claim, it is argued, is purely one of contractual interpretation and is ripe for immediate summary judgment. It is thus suggested that the interests of the preferred shareholders of Owens-Illinois can be far better and more expeditiously served by the *Laufer* action.

## I.

The questions presented by the application of the *Laufer* attorneys require me to reconsider my original determination that the *Brandt* action was maintainable as a (b)(3) class action. To recapitulate briefly, the *Brandt* complaint set forth two causes of action, the first alleging a violation of Section 10(b), the second, based on diversity of citizenship, alleging breach of contract. Plaintiff contended that defendant's Amended Articles of Incorporation required it to employ a purchase fund of $2,000,000 per year to repurchase its 4% cumulative preferred shares in the open market at the best prices obtainable but not in excess of $100 per share. Plaintiff alleged that defendant's continuous representations to its shareholders that it complied with this requirement violated § 10(b) and that its failure to meet this requirement was a breach of its obligations to its preferred shareholders.

In designating the *Brandt* action a (b)(3) class action, my principal concern was the § 10(b) claim which, as abundant authority now makes clear, can only be maintained under Rule 23(b)3. Korn v. Franchard Corporation, 456 F.2d 1206 (2nd Cir. 1972); Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968); Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968). In so doing it was not necessary to consider separately *Brandt's* second cause of action; for if it could be maintained under (b)(1) or (b)(2), it was also unquestionably maintainable under (b)(3). Therefore, I did not feel I was then presented with the necessity of applying the doctrine, first enunciated in Van Gemert v. Boeing Company, 259 F.Supp. 125 (S.D.N.Y. 1966), that if an action is maintainable under any of the subdivisions of Rule 23(b), it should be maintained under (b)(1) or (b)(2) rather than (b)(3). As the court noted in *Van Gemert*, the members of a (b)(3) class can elect to opt out and not be bound by the judg-

ment; they could thus institute separate actions which might produce the "inconsistent or varying adjudications" which Rule 23 is designed to prevent. Thus it was suggested that the maintenance of a (b)(1) or (b)(2) action under (b)(3) might well undermine the objectives which the former sections serve, however unlikely that eventuality is. Furthermore, the (b)(3) action is the most cumbersome to court and counsel for the parties; it is thus to be avoided in favor of the more efficient procedures of (b)(1) and (b)(2) wherever possible. The *Van Gemert* principle has been widely endorsed. Mungin v. Florida East Coast Railway Company, 318 F. Supp. 720 (M.D.Fla.1970), affd., 441 F. 2d 728 (5th Cir. 1971); Johnson v. City of Baton Rouge, 50 F.R.D. 295 (E.D.La. 1970); Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971); Berman v. Narragansett Racing Association, 48 F.R.D. 333 (D.R.I.1969); 3B Moore's Federal Practice ¶ 23.31[3]. Accordingly, consideration must be given to the maintenance of the second *Brandt* cause of action as a (b)(2) action.

■ Although the Advisory Committee's note stresses the applicability of Rule 23(b)(2) to civil rights actions, there is nothing in the language or the use of the rule that suggests its utility is limited to this field. It may apply whenever "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and when injunctive or declaratory relief is therefore the appropriate remedy. The rule is inapplicable where money damages is the primary relief sought, Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F.R.D. 26 (S.D.N.Y.1972), but may nevertheless be invoked where a mone-

tary award is but one element of an equitable remedy, Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971).

■ I therefore see no impediment to the application of Rule 23(b)(2) to the second *Brandt* cause of action. In that claim, plaintiff alleges that the defendant has failed to comply with the requirements of its Amended Articles of Incorporation; she seeks appropriate injunctive relief to compel compliance.[2] It would thus appear that Owens-Illinois has "refused to act on grounds generally applicable to the class", and the relief sought to remedy this refusal is injunctive. I therefore hold that the second cause of action falls within the ambit of (b)(2). I should note that I am fortified in reaching this conclusion by the views of Professor Moore[3] and Judge Frankel,[4] both of whom agree that an action on behalf of shareholders to compel the declaration of a dividend would be cognizable under (b)(2). As Judge Frankel noted, "[a]s a practical and as a legal matter, the decision compelling declaration of a dividend (or refusing to compel it) inescapably affects the whole class of stockholders and the total sum to be made available for distribution. Both the corporation and the class of stockholders will be affected, in one overall determination, to the tune of that amount."[5] I can see no material difference, as respects the propriety of (b)(2) treatment, between such an action and one seeking to compel the proper employment of a purchase fund to repurchase preferred shares. See also Van Gemert v. Boeing Company, supra.

## II.

A related question is whether the claims of those comprising the second

---

2. The complaint also seeks money damages, but that provision can be read as applying to the first cause of action, which is grounded in § 10(b).

3. 3B Moore's Federal Practice ¶ 23.40 at 23–654.

4. Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F.R.D. 39 at 49 (1967).

5. Id.

*Brandt* subclass are aggregable, or whether each member of the subclass must meet the jurisdictional minimum. Counsel for both Brandt and Laufer appear to assume that any (b)(2) class action *ipso facto* permits of aggregation. This view was at one time tentatively asserted by Judge Frankel[6] and then promptly rejected by Professor Moore.[7] Nevertheless it is now moderately clear that our Court of Appeals does not regard aggregation of claims as the inevitable concomitant of a (b)(2) designation. See Givens v. W. T. Grant Company, 457 F.2d 612, fn. 4 (2nd Cir. 1972).

■ I am thus required to make a separate determination of whether the members of the second subclass are asserting "separate and distinct claims", or whether they have "unite[d] to enforce a single title or right in which they have a common and undivided interest." In the latter situation aggregation is permitted, in the former it is not. Snyder v. Harris, supra, 394 U.S. at 335, 89 S.Ct. at 1057; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911).

*Snyder*, as is now well recognized, held that the changes in Rule 23 enacted in 1966 did not expand the jurisdiction of the federal courts over class actions. The jurisdictional requirements that antedated the 1966 changes thus survived, and among these was the requirement that in diversity cases the amount in controversy exceed $10,000. The claims of class members could only be aggregated to meet this requirement if the suit was a "true" class action, i. e., one in which the rights of the class members were "common and undivided." Aggre-

gation was not permitted in "hybrid" or "spurious" class actions. Thus although these categories stand today largely as historical curiosities, they retain a certain vitality in the determination of the permissibility of aggregation.

■ Is this, then, a "true" class action? Confusion characterized the construction of this phrase prior to the 1966 revision of Rule 23, and the ensuing years have brought little clarification. One commentator[8] has suggested that two tests were evolved by courts to determine the suitability of aggregation. One was the "interest in distribution test", which sought to ascertain whether the party opposing the class had any interest in the manner in which funds were to be distributed to members of the class. If the party had no interest, the claim was deemed common and undivided. The other was the "essential party" test, which held class claims aggregable when none of the class members could bring suit separately without directly affecting the rights of the other members of the class.[9] Under the latter test, the instant suit would surely qualify as a "true" class action, for once it is determined whether or not the defendant has been in compliance with its Amended Articles of Incorporation, all preferred shareholders will be affected similarly.

Although the question is troublesome, I have concluded that the applicable precedents support aggregation in the instant case. The closest case factually is Broenen v. Beaunit Corporation, 305 F.Supp. 688 (E.D.Wis.1969), affd., 440 F.2d 1244 (7th Cir. 1970). There plaintiff, the holder of convertible debentures, brought a class action against the survivor of a corporate merger for violation of a securities trust indenture that had been executed by a party to the

---

6. Id.

7. 3B Moore's Federal Practice ¶ 23.95, fn. 17.

8. Note, Aggregation of Claims in Class Actions, 68 Columbia Law Review 1554 (1968).

9. This analysis was adopted by Judge Tenney in Bass v. Rockefeller, 331 F.Supp. 945 (S. D.N.Y.1971).

merger. Prior to the merger the debentures had been convertible into shares of Corporation A; the terms of the merger provided that they could be converted into shares of Corporation B. The latter act was taxable, the former was not. Plaintiff alleged that this change reduced the value of the debentures and violated the original trust indenture pursuant to which the debentures were issued. Because the action was based on diversity of citizenship, and because the named plaintiffs' holdings amounted to merely $2,000, the defendants moved to dismiss for failure to meet the jurisdictional amount requirement. The court denied this motion and concluded that plaintiffs had united to enforce a common and undivided interest within the meaning of *Snyder*. The court reasoned as follows:

> "Each member of the proposed class claims all his rights in the debentures through the same trust indenture. Allegedly, a single transaction involving all of the defendants to this action violated the term of the trust indenture, thereby damaging all members of the proposed class equally for each share he owned on the date, assuming it could be proved that there was a permanent reduction in the market price of each debenture."

See also Berman v. Narragansett Racing Association, 414 F.2d 311 (1st Cir. 1969).

Also of possible relevance here are cases involving rights under or possible misuse of a trust fund. In Dierks v. Thompson, 414 F.2d 453 (1st Cir. 1969), former employees of a subsidiary of a corporation brought a class action to determine their rights under a profit-sharing pension plan. The court held that "[s]ince plaintiffs, in one aspect, are seeking to establish a trust fund as distinguished from individual cash claims against the defendants," this was a "true" class action and aggregation was permissible. The court also noted that "[t]he fact that the individual plaintiffs' beneficial interests may be of fixed proportion does not vary the fact that the existence of a single trust res is of common importance." In Dixon v. Northwestern National Bank of Minneapolis, 276 F.Supp. 96 (D.Minn.1967), eight persons sued the trustee of an employee's profit sharing trust, claiming improper use of trust funds. The court held aggregation proper, noting that all claimants sought recovery pursuant to a single instrument, and each was interested in establishing the same breach of trust. Hence the court concluded that aggregation was not defeated by the fact that the plaintiffs sought *pro rata* shares of the trust fund. See also Redmond v. Commerce Trust Co., 144 F.2d 140 (8th Cir.), cert. denied, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944).

One other precedent is worthy of mention. Miller v. National City Bank of New York, 147 F.2d 798 (2nd Cir. 1945), was a class action brought by a holder of a certificate of participation in a grant of credit by a syndicate of banks to the Imperial Russian Government. His complaint alleged that one of the banks participating in the syndicate had failed to distribute to the certificate holders an unexpended credit of $5,100,000, but rather had retained the sum for its own purposes. The named plaintiff's share of the withheld funds amounted to only $510, and thus the defendants raised the jurisdictional amount requirement. The court held aggregation permissible: "[w]hat the plaintiff is seeking here is to compel Guaranty to restore to a fund which belonged to all the certificate-holders in common moneys it is said to have misapplied and then to make a distribution as ancillary to the primary relief." The court held that the amount in controversy was the entire $5,100,000.

On the basis of the foregoing I am satisfied that the instant case is a "true" class action, and that the second subclass is not composed merely of these 55 individuals whose holdings of Ow-

ens-Illinois preferred stock exceeds $10,-000, but rather consists of all preferred shareholders. As in *Broener*, *Dierks*, and *Dixon*, the members of the subclass are suing pursuant to a single instrument, and all seek the benefit of a single fund. As in *Miller*, they claim that the instrument compels the defendant to employ the fund in a given manner. Stated differently, the basic question posed by the second *Brandt* cause of action is the use to which the purchase fund is to be put; that question has precisely the same significance for every holder of preferred stock. I thus conclude that the plaintiff seeks here to assert a right in which all class members have "a common and undivided interest." Snyder v. Harris, supra.

### III.

██ ██ The instant case is thus to proceed as a (b)(3) class action with regard to the first cause of action, and as a (b)(2) class action with regard to the second. This procedure is nowhere proscribed in Rule 23, and is indeed supported by ample precedent. See, e. g., Technograph Printed Circuits, Ltd. v. Methode Electronics, 285 F.Supp. 714 (N.D.Ill.1968); Northern Natural Gas Company v. Grounds, 292 F.Supp. 619 (D.Kan.1968), affirmed in part and remanded, 441 F.2d 704 (10th Cir. 1971), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971). Accordingly, it will be necessary to make appropriate revisions in the notice to the class. I direct that all members of both subclasses be given individual notice by first class mail. It is now, of course, well settled that some form of notice is required in all class actions, even though Rule 23 adverts only to those maintained under (b)(3). Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); Johnson v. Georgia Highway Express Company, 417 F.2d 1122 (5th Cir. 1969); Ostapowicz v. Johnson Bronze Company, 54 F.R.D. 465 (W.D.Pa.1972). The notice shall explain that only those who are members of the first subclass may opt out, and (assuming they are members of both subclasses) that they may do so only with regard to the first cause of action.

### IV.

██ I turn finally to the narrow question posed at the outset: shall the *Laufer* attorneys represent the second subclass in the instant action? Because I have concluded that the members of the second subclass will in no way be prejudiced through their representation by the *Brandt* attorneys, I see no reason to permit the *Laufer* attorneys to intervene in their stead. As I noted earlier, much of the supposed prejudice to the members of the second subclass flowed from my original determination that the instant case proceed under Rule 23(b)(3). Any prejudice that did exist thus evaporates with the redesignation of the second cause of action under (b)(2) and the determination that the claims are aggregable. Thus the subclass now consists of all preferred shareholders, not merely those with holdings in excess of $10,000. Nor will members of the second subclass be prejudiced by the delay entailed by the complexity of the § 10(b) cause of action. The plaintiff in *Brandt* has already moved for summary judgment on the second cause of action, and such motion is now returnable on January 21, 1974. That motion presents what all agree to be the critical question in this case, that of the defendant's compliance with its corporate charter regarding the use of the purchase fund. If defendant prevails on this point, the § 10(b) cause of action is eviscerated as well.

I would thus only be justified in substituting the *Laufer* attorneys for the *Brandt* attorneys were I to find the interests of the two subclasses to be in conflict, or were I to find the *Brandt* attorneys inadequate. I perceive no conflict here: both subclasses have a common interest in establishing the defend-

ant's failure to comply with its corporate charter. Nor have the *Brandt* attorneys been in any respect inadequate: they have thus far prosecuted this action vigorously and with high competence. Moreover, they have been actively engaged in discovery for over a year, and, it is fair to assume, are far more knowledgeable at this juncture than the *Laufer* attorneys, whose action has been pending but a few months. As a member of one or both subclasses, Mr. Laufer may of course intervene through his counsel if he considers his interests inadequately protected. In the present posture of the case, however, I decline to substitute his attorneys for Brandt's in the second cause of action.[10]

Counsel for the parties in the instant case are directed to submit an amended order and class notice, incorporating the changes in the status of the case set forth in this opinion.

So ordered.

10. One other criterion for selection of the class representative appears irrelevant here. § 1.44 of the Manual for Complex Litigation suggests that if competing counsel are equally skilled, "the court may make a choice which will result in the least cost of legal representation to members of the class or subclass." The *Laufer* attorneys have not suggested that their representation will afford the class any substantial saving, and the section goes on to make clear that it contemplates merely a preference for a publicly employed counsel, such as a State Attorney General, over a private lawyer where that alternative is available.