## CLARK, DIRECTOR OF DEPARTMENT OF MOTOR VEHICLES, ET AL. *v.* PAUL GRAY, INC. ET AL.

No. 534.   Argued March 27, 1939.—Decided April 17, 1939.

584

*Mr. Amos M. Mathews,* with whom *Messrs. Earl Warren,* Attorney General of California, and *Frank W. Richards* and *James H. Oakley,* Deputy Attorneys General, were on the brief, for appellants.

*Mr. Everett W. Mattoon* for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

The principal questions for decision are whether the California Caravan Act of 1937, exacting fees aggregating

$15 for each automobile driven into the state for sale, imposes a forbidden burden on interstate commerce or infringes the due process or equal protection clauses of the Fourteenth Amendment.

This is an appeal under §§ 238 (3), 266 of the Judicial Code; 28 U. S. C. §§ 345 (3), 380, from a final decree of the district court for southern California, three judges sitting, enjoining appellants, officers of the State of California, from enforcing the license and fee provisions of Chapter 788, p. 2253, California Statutes of 1937. *Gray v. Ingels*, 23 F. Supp. 946.[1]

The statute, known as the Caravan Act, was enacted as a substitute for the Caravan Act of 1935, c. 402, Cal. Stat. 1935, held invalid in *Ingels v. Morf*, 300 U. S. 290, as an infringement of the commerce clause. "Caravaning" is defined in § 1 of the present Act as the "transportation of any vehicle . . . operated on its own wheels, or in tow of a motor vehicle, for the purpose of selling or offering the same for sale . . . within or without this State." Sections 4, 5 and 6 exact in lieu of all other fees two license fees, each of $7.50, for a six-months permit for caravaning a vehicle on the state highways. One of these is "to reimburse the State for expense incurred in administering police regulations pertaining to the operation of vehicles moved pursuant to such permits and to public safety upon the highways as affected by such operation"; the other is declared to be "compensation for the privilege of using the public highways." Section 8 excepts from the

---

[1] The suit was begun July 14, 1937, before the enactment of the amendment to § 24 of the Judicial Code; Act August 21, 1937, c. 726, 50 Stat. 738, providing that "no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." Section 2 of the Act excludes from its operation suits begun in the district courts before its enactment.

operation of the statute vehicles moving wholly within either of two zones which are approximately the northern and southern halves of the state. Other sections of the Act make provision for the issuance of licenses and the collection of fees. Section 12 provides for the collection of fees by seizure and sale of vehicles transported in violation of the Act, and § 13 prescribes criminal penalties for violation.

Appellees, numerous individuals, copartnerships and corporations, joined in bringing the present suit against appellants, state officers charged with the duty of enforcing the Act, alleging, that each appellee had driven and would in the course of business drive automobiles into California for the purpose of sale. They prayed an injunction restraining appellants from collecting the fees and enforcing the provisions of the statute in aid of their collection. The district court's findings state that the amount involved in the action is in excess of the sum of $3,000; that each of appellees, in the course of business of selling motor cars, purchases cars previously registered in other states and "caravans" them into the State of California; that cars for sale are often moved between points in a state zone; that the operation of cars in caravans does not create an additional hazard or a traffic problem necessitating special policing of the caravans and that the caravaning of cars does not create undue wear and tear on the highways of the state; that the fees charged are excessive and bear no relation to the added expense to the motor vehicle department of policing the highways of the State of California; and that they are disproportionate to other taxes or license fees charged by the state for the use of the highways. The court concluded that the statute discriminated against interstate commerce, deprived appellees of their property without due process, and denied to them equal protection of the laws, in that it applies only to those using the highways

for the transportation of motor vehicles for the purposes of sale and does not apply to other persons using the highways under comparable circumstances.

Appellants assail here the findings of fact of the court below on which it predicated its conclusion of unconstitutionality, and insist that upon the evidence there is no basis for the conclusion that the fees exacted are excessive or that there is discrimination against interstate commerce or a denial of equal protection or due process.

JURISDICTION OF THE DISTRICT COURT.

A motion of appellants in the court below to dismiss the bill of complaint for want of the jurisdictional amount was withdrawn, and the jurisdiction of the district court is not challenged here. But on the argument, it appearing doubtful whether the "matter in controversy" exceeded "the sum or value of" $3,000, § 24(1) of the Judicial Code; 28 U. S. C. § 41 (1), we raised the question whether the jurisdictional amount was involved, as was our duty. *Mansfield, C. & L. M. Ry. Co.* v. *Swan,* 111 U. S. 379, 382; *Stratton* v. *St. Louis Southwestern Ry. Co.,* 282 U. S. 10, 13; *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.,* 303 U. S. 283, 287, note 10. The bill of complaint alleges generally that "the amount involved in this litigation is in excess of Three Thousand Dollars ($3,000.00), exclusive of interest and costs." But it is plain that this allegation is insufficient to satisfy jurisdictional requirements where there are numerous plaintiffs having no joint or common interest or title in the subject matter of the suit. As the bill of complaint shows on its face, and as the findings establish, each appellee maintains his own separate and independent business, which is said to be affected by the challenged fees. No joint or common interest of appellees in the subject matter of the suit is shown. Cf. *Gibbs* v. *Buck,* 307 U. S. 66.

It is a familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements. *Wheless* v. *St. Louis*, 180 U. S. 379; *Rogers* v. *Hennepin County*, 239 U. S. 621; *Pinel* v. *Pinel*, 240 U. S. 594; *Scott* v. *Frazier*, 253 U. S. 243. The general allegation in the bill of complaint that "the amount involved in this litigation is in excess of" $3,000 and the finding of the court that "the amount involved in the within action" exceeds the jurisdictional amount, give no indication that the amount in controversy with respect to the claim of any single plaintiff exceeds the jurisdictional amount and are insufficient to show that the district court had jurisdiction of the cause. *Pinel* v. *Pinel, supra.*

Examination of the record shows that only in the case of a single appellee, Paul Gray, Inc., is there any allegation or proof tending to show the amount in controversy. As to it the bill of complaint alleges that "it causes to be caravaned into the said state . . . approximately one hundred fifty (150) automobiles each year." This allegation is supported by evidence that this appellee is regularly engaged in the business and tending to show that its volume exceeded that amount when the act went into effect July 2, 1937. Since the amount in controversy in a suit to restrain illegal imposition of fees or taxes is the amount of the fees or taxes which would normally be collected during the period of the litigation, *Healy* v. *Ratta*, 292 U. S. 263, we cannot say, upon this state of the record, that jurisdiction was not established as to appellee Paul Gray, Inc.

We ignore affidavits filed here for the purpose of supplementing the record by showing the amount in controversy as to another appellee. While it has been the prac-

tice of this Court to receive affidavits for the purpose of establishing its own appellate jurisdiction under statutes prescribing that a specified amount in controversy is prerequisite to the appeal, *Williamson* v. *Kincaid,* 4 Dall. 20; *Rush* v. *Parker,* 5 Cranch 287; *Roura* v. *Philippine Islands,* 218 U. S. 386; see *Red River Cattle Co.* v. *Needham,* 137 U. S. 632, that procedure is inapplicable here. Our review of the action of the district court in assuming jurisdiction is confined to the record before the district court. *Henneford* v. *Northern Pacific Ry. Co.,* 303 U. S. 17.

Proper practice requires that where each of several plaintiffs is bound to establish the jurisdictional amount with respect to his own claim, the suit should be dismissed as to those who fail to show that the requisite amount is involved.[2]  Otherwise an appellate court could be called on to sustain a decree in favor of a plaintiff who had not shown that his claim involved the jurisdictional amount, even though the suit were dismissed on the merits as to the other plaintiffs who had established the jurisdictional amount for themselves.  Although it appears that such a result could not follow here, we think it better practice to dismiss the suit for want of the jurisdictional amount as to all appellees except Paul Gray, Inc.  See *Rich* v. *Lambert,* 12 How. 347; *Ex parte Baltimore & Ohio Railroad Co.,* 106 U. S. 5; *Hassall* v. *Wilcox,* 115 U. S. 598.  Cf. *Grosjean* v. *American Press Co.,* 297 U. S. 233.

[2] A different question is involved in the case of a creditor's bill to liquidate an insolvent corporation for the benefit of all creditors. There his claim must exceed the jurisdictional amount  *Lion Bonding Co.* v. *Karatz,* 262 U. S. 77.  But creditors whose claims are less may be made parties because of their interest in a fund brought within the jurisdiction of the court.  *Gibson* v. *Shufeldt,* 122 U. S. 27; *Handley* v. *Stutz,* 137 U. S. 366; *National Bank of Commerce* v. *Allen,* 90 F. 545, 555–556.

DISCRIMINATION.

Apart from appellees' insistence that the fees are an unconstitutional burden on interstate commerce because excessive, the substance of their contention is that the statute discriminates between automobiles transported into the state singly and those similarly transported intrazone, for which no fee is charged, and also that the statute discriminates between those cars driven by appellees in caravans and those similarly driven wholly within either of the state zones, for which no fee is charged.

In *Morf* v. *Bingaman,* 298 U. S. 407, we had occasion to consider the validity of a fee or tax exacted by New Mexico for the transportation into the state of any motor vehicle for the purpose of sale within or without the state. It there appeared that the plaintiff, with others, was engaged in transporting motor cars on their own wheels in caravans across the State of New Mexico for the purpose of sale, and that their transportation for that purpose had resulted in the creation of a distinct class of motor vehicle traffic of considerable magnitude. In the course of this business second-hand cars purchased at points in the east are assembled in caravans, which are driven as such to the point of sale in California. Large numbers of the cars are coupled in twos, each two in charge of a single driver who operates the forward car and controls the movement of both by the use of the mechanism and brakes of one. The drivers of caravans, except two or three regularly engaged, are casually employed and serve without pay or for small compensation in order to secure transportation to the point of destination. We said, page 411–412:

"The legislature may readily have concluded, as did the trial court, that the drivers have little interest in the business or the vehicles they drive and less regard than

drivers of state licensed cars for the safety and convenience of others using the highways. The evidence supports the inference that cars thus coupled and controlled frequently skid, especially on curves, causing more than the usual wear and tear on the road; that this and other increased difficulties in the operation of the coupled cars, and the length of the caravans, increase the inconvenience and hazard to passing traffic. . . . There is ample support for a legislative determination that the peculiar character of this traffic involves a special type of use of the highways, with enhanced wear and tear on the roads and augmented hazards to other traffic, which imposes on the state a heavier financial burden for highway maintenance and policing than do other types of motor car traffic. We cannot say that these circumstances do not afford an adequate basis for special licensing and taxing provisions, whose only effect, even when applied to interstate traffic, is to enable the state to police it, and to impose upon it a reasonable charge, to defray the burden of this state expense, and for the privilege of using the state highways."

The State of California has found it expedient to adopt licensing provisions for this class of traffic and to exact the fees specified in the statute for the use of its highways and the expense of policing. That this peculiar type of traffic occurs in large volume between eastern points and points in California, and that there is basis for the legislative judgment that the traffic imposes special burdens on the use of the state highways for which a special charge may be made, are abundantly supported by the record. The parties have stipulated that fifteen thousand automobiles are brought into the state for sale annually. Of these, from 80 to 90 per cent. come in caravans or convoys, and of the cars so moving one-half are coupled together in twos. It further appears by stipulation that the caravans or convoys are made up of from nineteen to twenty-five cars.

There is much evidence in the record indicating that it is the long haul traffic in cars for sale in California which tends to produce the movement in large caravans or convoys in order to save expense of transportation, and which in turn tends to impose special burdens on the state in connection with the use of its highways, calling for the imposition of regulations and fees different from those applied to other types of motor car movement. Without repeating what was said more at length of like traffic in *Morf* v. *Bingaman, supra,* the evidence in the present case shows that coupled cars, under control of a single driver, subject the highways to increased wear and tear because of their tendency to skid and sway on curves and in passing other traffic, and that the length of the caravans and the inefficiency and irresponsibility of the drivers, casually employed, increase traffic congestion and the inconveniences and hazards of automobile traffic. These circumstances have caused the state to make increased provision for the policing of the traffic. It is true that the district court found that the practice of caravaning creates no additional traffic hazard, nor any undue wear and tear on the highways. But in this we think that its determination was not only contrary to the evidence, but went beyond the judicial province.

It is no longer open to question that the states have constitutional authority to exact reasonable fees for the use of their highways by vehicles moving interstate, *Hendrick* v. *Maryland,* 235 U. S. 610; *Kane* v. *New Jersey,* 242 U. S. 160; *Clark* v. *Poor,* 274 U. S. 554; *Sprout* v. *South Bend,* 277 U. S. 163; *Morf* v. *Bingaman, supra; Dixie Ohio Express Co.* v. *State Revenue Comm'n, ante,* p. 72, and that for that purpose they may classify the vehicles according to the character of the traffic and the burden it imposes on the state by that use, and charge for the use a fee not shown to be unreasonable or ex-

cessive. *Continental Baking Co.* v. *Woodring,* 286 U. S. 352, 370–371; *Hicklin.*v. *Coney,* 290 U. S. 169; *Morf* v. *Bingaman, supra,* 413; *Dixie Ohio Express Co.* v. *State Revenue Comm'n, supra.*

The classification of the traffic for the purposes of regulation. and fixing fees is a legislative, not a judicial, function. Its merits are not to be weighed in the judicial balance and the classification rejected merely because the weight of the evidence in court appears to favor a different standard. Cf. *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292, 299. The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility. *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 584; *Borden's Farm Products Co.* v. *Ten Eyck,* 297 U. S. 251, 263; s. c. 11 F. Supp. 599, 600; *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 191–192; *United States* v. *Carolene Products Co.,* 304 U. S. 144, 153–154. Hence, in passing on the validity of the present classification, it is not the province of a court to hear and examine evidence for the purpose of deciding again a question which the legislature has already decided. Its function is only to determine whether it is possible to say that the legislative decision is without rational basis. This is equally the case where the classification, which is one which the legislature was competent to make, is applied to vehicles using the state highways in interstate commerce. *South Carolina Highway Dept.* v. *Barnwell Bros., supra,* 187 *et seq.* The legislature must be assumed to have acted on information available to courts, and where, as here, the evidence, like that discussed in *Morf* v. *Bingaman, supra,* shows that it is at least a debatable question whether the traffic in caravans involves special wear and tear of the highways and increased traffic hazards requiring special police control, decision is for the legislature and not the courts. *Standard Oil Co.* v. *Marysville,*

*supra; South Carolina Highway Dept.* v. *Barnwell Bros., supra.*

Appellee Paul Gray, Inc., so far as appears, caravans its cars for sale in California from Detroit, Michigan, and St. Joseph, Missouri. Its cars, like those of the other appellees, move in caravans of from nineteen to twenty-five cars. It does not appear, nor is it contended, that this appellee transports any cars singly. From what has been said it is evident, as was decided in *Morf* v. *Bingaman, supra,* that cars moving in caravans of the type described constitute a special class of traffic which may be taxed or charged for differently from other classes without infringing the equal protection clause.

The argument that the statute denies equal protection to appellees because it exacts fees for cars transported into the state for sale singly but none for cars which move similarly intrazone or for those which enter the state not for the purposes of sale, ignores the actual circumstances in which the statute is applied to appellees, as shown by the record, and seeks to take advantage of an alleged discrimination which, if it exists, does appellees no harm. The Fourteenth Amendment does not require classification for fees, more than for taxation, to follow any particular form of words. If that adopted results in the application of the exaction to a class which may be separately charged without a denial of equal protection, those within the class cannot complain that it might have been more aptly defined or that the statute may tax others who are not within the class. See *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144; *Silver* v. *Silver,* 280 U. S. 117, 123; *Morf* v. *Bingaman, supra,* 413.

It is the practice of transporting automobiles for long distances over the highway for purpose of sale which has given rise to the practice of moving them in caravans. The use of automobiles for other purposes, or for pleasure, does not have that result. The classification of the stat-

ute, in its practical application, embraces and is constitutionally applicable to cars moving in caravans, the class of traffic in which appellee Paul Gray, Inc., engages and on which it is alone taxed. One form of discrimination of which it complains is that fees are exacted for cars driven into the state singly for sale but not for those driven singly to market intrazone or singly from without the state for other purposes. Appellee does not show that it belongs to either class, and so far as the traffic in which it participates is properly taxed, it cannot complain of the imposition of the charge on a business which it does not do.

So far as appellees complain that no fee is exacted for cars which move for sale intrazone in caravans, different considerations apply. As we have said, it is the long haul of cars for sale which has produced motor vehicle caravans and has made them a special class for the purposes of regulation and imposition of fees. It was for the legislature to consider and decide whether the actual conditions which prevail in the state, affecting movement of cars for sale, eliminate or so reduce the burden of the caravan traffic on the highways as to call for a different classification of the short haul traffic for the purposes of regulation and fees. The legislature having made its classification by the establishment of zones, in the light of special conditions in the state, courts are not free to set aside its determination unless they can say that it is without any substantial basis. *Carley & Hamilton* v. *Snook,* 281 U. S. 66, 73; *Continental Baking Co.* v. *Woodring, supra; Sproles* v. *Binford,* 286 U. S. 374; *Hicklin* v. *Coney, sup. a; Aero Mayflower Transit Co.* v. *Public Service Comm'n,* 295 U. S. 285.

The trial court found that cars are often moved in convoys in Zone 1, which includes the metropolitan area of Los Angeles, and it thought this sufficient to establish an unlawful discrimination without consideration of the

other conditions affecting the intrazone traffic. The evidence establishes, beyond any reasonable doubt, that the movement intrazone of cars for sale in convoys similar to that of appellees is negligible and that the principal sources of cars for sale moving intrazone are the assembly plants of automobile manufacturers located in or near the metropolitan areas of Los Angeles and San Francisco. Being new cars, the bulk of them, shipped interstate or to distant points intrastate, move by rail, water, or truck. Most of those which move on their own wheels are driven relatively short distances, seventy-five miles or less, in the metropolitan area over highways of more than two lanes, as distinguished from caravans coming from without the state, which move for long distances over two-lane highways in mountain districts. The proportion driven singly does not appear. Such convoys or caravans as there are usually consist of two or three cars. The evidence discloses no case of more than four. Coupling is negligible. Each car is in charge of a regularly employed and licensed driver. The intrazone movement is subject to other licensing and taxing provisions of the state law, and no showing is made that the differences in fees or taxes exacted from the two classes of traffic do not bear a fair relationship to the differences in the burden of the traffic for which the state must provide.

The legislature could reasonably have concluded that the wear and tear and injury to the highways from driving coupled cars intrazone was negligible, and that the relatively short distances which cars are driven in twos or threes, the character of the highways used, and the difference in the class of drivers, taken together, eliminate from the intrazone traffic or so substantially reduce the burden imposed by traffic like that of appellees moving interstate or interzone as to require, in fairness, a different classification for the purpose of fees charged for the use of the highways. We cannot say that that conclusion

is without support or infringes the principles which we have repeatedly recognized as defining the power of the states, in the absence of Congressional action, to classify vehicles or traffic for the purposes of regulating use of the highways by vehicles moving interstate. If the classification with respect to a matter remaining within state control, despite the commerce clause, is otherwise valid, it is not any the less so because it affects interstate commerce. See *South Carolina Highway Dept.* v. *Barnwell Bros., supra,* 191–192, and cases cited. As the state has authority to charge a reasonable fee for the use of its highways, and as the classification of the traffic which the state has made for the purpose of fixing the fees is valid, the only remaining question is whether the fees which it has fixed must be deemed excessive.

REASONABLENESS OF THE FEES.

In *Ingels* v. *Morf, supra,* the $15 fee charged under the California Act of 1935 for driving a car into the state for purpose of sale was contested as excessive. There the statute declared that the fee was "intended to reimburse the State treasury for the added expense which the State may incur in the administration and enforcement of this Act, and the added expense of policing the highways over which such caravaning may be conducted, . . ." and the automobile owner assumed and by proof sustained the burden of showing that the charge made for the precise purposes defined by the statute was excessive. We accepted the evidence as establishing that the cost of issuing caravan permits was about $5 per car and as supporting the finding of the trial court that the cost of policing did not exceed $5 a car. And we concluded that the total cost of administration and policing was substantially less than the $15 fee charged.

Here a fee of $7.50 is collected for administration and enforcement of the Act and a fee of like amount is charged

for the use of the highways. Appellees have offered no proof that either of the fees is too large, although the burden rested upon them to show that the fees were excessive for the declared purposes. *Hendrick* v. *Maryland, supra,* 624; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 251; *Morf.* v. *Bingaman, supra,* 410; *Ingels* v. *Morf, supra,* 296. *Great Northern Ry. Co.* v. *Washington,* 300 U. S. 154, is not to the contrary.

Appellants, without abandoning their position that the burden of proof rests on appellees, offered evidence to show that the costs of administration and policing proved in *Ingels* v. *Morf, supra,* were incomplete. Due to the nature of the case much of the proof is inexact and speculative. But there is evidence that thirty-nine officers devoted part or all of their time to enforcing the 1937 Act. The expense of operating their automobiles and motorcycles is considerable; an increased burden is imposed upon the personnel of the border police stations; and some increase in clerical force and in expenditures for stationery and miscellaneous items has been required. Investigations of attempted evasions increase the unit cost above that of other types of traffic. The total of these added expenses, as computed by appellants at about $133,000 annually, certainly approximates the amount of the revenue derived from the fees. The aggregate of the fees collected during eleven months for 14,000 cars at $7.50 each is $105,000. Appellees do nothing to challenge this evidence, and they point to no specific errors in the estimates or computation upon which appellants calculate the costs.

The state is not required to compute with mathematical precision the cost to it of the services necessitated by the caravan traffic. If the fees charged do not appear to be manifestly disproportionate to the services rendered, we cannot say from our own knowledge or experience that they are excessive. *Kane* v. *New Jersey, supra,* 168;

*Interstate Busses Corp.* v. *Blodgett, supra,* 251, 252; *Morf* v. *Bingaman, supra; Dixie Ohio Express Co.* v. *State Revenue Comm'n, supra;* see *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345, 354; *McLean & Co.* v. *Denver & Rio Grande R. Co.,* 203 U. S. 38, 55; *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186. Appellees have failed to sustain the burden of proof that either of the fees is excessive for the purpose for which it is collected.

The trial court seems to have thought as appellees argue, that unreasonableness of the fees was established by proof that the same fees are not imposed on other classes of traffic. But since, as we have seen, there is basis for the classification of the traffic, there is basis for a difference in fees charged the different classes. *Hendrick* v. *Maryland, supra; Interstate Busses Corp.* v. *Blodgett, supra.* Appellees have laid no foundation for any contention that there are not compensating differences in the traffic comparable to the difference in fees, or for impeaching the legislative judgment that those specified are fairly related to the traffic to which they are applied.

The cause will be reversed with instructions to the district court to dismiss the case as to appellee Paul Gray, Inc., on the merits, and to dismiss as to the other appellees for want of jurisdiction.

*Reversed.*

Mr. Justice Black is of the opinion that the case should be dismissed for want of jurisdiction as to all the appellees.