Geneva DAVIS, Michael H. Roberts, Plaintiffs-Appellants,

v.

CARL CANNON CHEVROLET-OLDS, INC; General Motors Acceptance Corporation, et al., Defendants-Appellees.

No. 98-6567.

United States Court of Appeals,

Eleventh Circuit.

July 26, 1999.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV97-P-2889-J), Sam Pointer, Jr., Chief Judge.

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and NANGLE[*], Senior District Judge.

COX, Circuit Judge:

The question this appeal poses is whether, in a class action, a potential attorneys' fee awarded out of a common fund may count in the aggregate toward the jurisdictional minimum necessary to establish diversity jurisdiction. We hold that it may not.

*1. Background*

The plaintiffs here, and the class they ask to represent, are purchasers of extended service contracts on General Motors vehicles. According to the plaintiffs, General Motors Acceptance Corporation, in conspiracy with GM dealerships, fraudulently concealed that the dealerships make a profit on such contracts. The plaintiffs thus sued GMAC and a local dealership in the Circuit Court of Walker County, Alabama, a rural county northwest of Birmingham. The *ad damnum* clause in each of the complaint's six substantive counts seeks only "compensatory damages as may be allowed by law." (R.1-8 at 2-6.) The end of the complaint, moreover, contains the following "do not remove me" "disclaimer" in capital, boldface letters:

**NOTWITHSTANDING ANY ALLEGATION MADE WITHIN THIS COMPLAINT, THIS ACTION IS BROUGHT SOLELY PURSUANT TO THE COMMON LAW AND STATUTORY LAW OF THE STATE OF ALABAMA. NO CLAIM IS MADE UNDER OR**

[*]Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

**FOR ANY CAUSE OF ACTION ARISING UNDER THE CONSTITUTION OR LAWS OF THE UNITED STATES OF AMERICA. FURTHER, NOTWITHSTANDING ANY ALLEGATION CONTAINED HEREIN, THE PLAINTIFF AND EACH AND EVERY MEMBER OF THE CLASS DEFINED HEREIN EXPRESSLY WAIVE AND FOREGO [*sic*] ANY CLAIM FOR PUNITIVE DAMAGES AND LIMIT THEIR CLAIMS SOLELY TO COMPENSATORY DAMAGES. THE PLAINTIFF AND EACH CLASS MEMBER ALSO EXPRESSLY WAIVE ANY CLAIM FOR DAMAGES OVER SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00). THIS CLASS [*sic*] IS A MONEY DAMAGE CASE BROUGHT ONLY UNDER RULE 23(B)(3), ALABAMA RULES OF CIVIL PROCEDURE; THEREFORE, ANY CLASS MEMBER WHO WISHES TO PURSUE PUNITIVE DAMAGES IN AN AMOUNT GREATER THAN SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) MAY OPT-OUT [*sic*] AND DO SO.**

(*Id.* at 8.)

GMAC nonetheless removed the action to federal court. The plaintiffs moved to remand, pointing out the diversity jurisdiction-defeating features of their complaint: first, they joined a local GM dealership; and second, they disclaimed on behalf of the class all damages above the $75,000 jurisdictional amount.[1] Notwithstanding these features, the district court denied the plaintiffs' motion to remand. First, the court concluded that the GM dealership was fraudulently joined to defeat jurisdiction. (The dealership was then voluntarily dismissed, so no fraudulent-joinder issue is before us.) Second, the court concluded that the complaint, while disclaiming all compensatory and punitive damages over $75,000 per plaintiff, alleged the requisite amount in controversy because the lawyers did not disclaim a fee exceeding that amount. The district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). The plaintiffs sought to appeal, and we permitted it.

### 2. Discussion

*a. Zeroing in on the issue.* Several undisputed background rules frame the issue here. Removal jurisdiction exists only when the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a); *Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2051, 141 L.Ed.2d 364 (1998). One ground of original jurisdiction in the district court—the only one asserted here—is complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C.

---

[1]*See* 28 U.S.C. § 1332(a).

§ 1332(a)[2]; *Carden v. Arkoma Assocs.,* 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990). Because the district court found fraudulent joinder, and the plaintiffs dismissed the only nondiverse party, the only issue here is whether the amount in controversy is more than $75,000. And that issue is further narrowed because each plaintiff seeks no more than $75,000, and the *compensatory* damage claims of individual class members may not be aggregated to satisfy the amount. *See Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). *Punitive* damage claims are aggregated,[3] but the plaintiffs have disclaimed such damages; for the moment we assume that the disclaimer is effective. We also assume, without deciding, that the plaintiffs' claim for injunctive relief does not exceed $75,000 in value. The sole possibility for satisfying the requisite amount in controversy, therefore, is the claim for attorneys' fees.

There is no dispute among the parties that plaintiffs' lawyers will seek a fee ultimately paid by the defendant. While the complaint contains no such claim, the plaintiffs' lawyers candidly acknowledged at oral argument that they were not working for free, and the district court took an attorney-fee claim to be implicit in the class-action complaint. The parties do disagree, however, over how Alabama law will shape that fee award, for reasons that we will explain.

Alabama generally follows the American rule that each party must bear her own attorneys' fees. Apart from statutory and contractual fee-shifting provisions, neither of which is available here, Alabama recognizes two principal kinds of "equitable" fee-shifting. *See Horn v. City of Birmingham,* 718 So.2d 694, 703 (Ala.1998). The first is the so-called "common fund" doctrine, which authorizes the trial court to deduct as an attorneys' fee a reasonable percentage (which apparently means at least 20%) of a common fund that class representatives have collected for distribution among the class. *See Edelman & Combs v. Law,* 663

---

[2]"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States...."

28 U.S.C. § 1332(a).

[3]*See Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1359 (11th Cir.1996).

So.2d 957, 959-60 (Ala.1995). The second is the "common benefit" doctrine, which permits an award of fees to be paid by the defendant, independent of any fund, when the plaintiffs have conferred some kind of benefit on the public. *See, e.g., Brown v. Alabama,* 565 So.2d 585, 592 (Ala.1990). GMAC contends, and the plaintiffs dispute, that a fee here could just as well be awarded under the common-benefit doctrine as under the common-fund doctrine.

On this issue the plaintiffs have the upper hand. Alabama courts have invoked the common-benefit doctrine only when there is a benefit conferred upon the "general public." *Horn,* 718 So.2d at 702; *Battle v. City of Birmingham,* 656 So.2d 344, 347 (Ala.1995); *Bell v. Birmingham News Co.,* 576 So.2d 669, 670 (Ala.Ct.Civ.App.1991). And in every appellate-level case affirming a fee award under this doctrine, a benefit was conferred on a large segment of the public by bringing "an end to an improper practice" of a governmental entity. *See Horn,* 718 So.2d at 706 (plaintiffs stopped Birmingham from improperly approving the construction of a waste-transfer facility); *Brown,* 565 So.2d at 592 (plaintiffs' suit caused state law enforcement agencies to stop issuing traffic tickets without verification); *Bell,* 576 So.2d at 670-71 (plaintiff newspaper stopped Birmingham City Council from casting secret ballots). *Compare Dandy's Discount Package Store, Inc. v. Sizemore,* 597 So.2d 1370, 1372 (Ala.Ct.Civ.App.1992) (liquor stores who challenged tax and were successful had not conferred sufficient benefit on general public to warrant fee award independent of fund); *Advertiser Co. v. Auburn Univ.,* 579 So.2d 645, 648 (Ala.Ct.Civ.App.1991) (trial court justified in refusing fees where action to force disclosure of document, while successful, did not establish any precedent or stop any ongoing illegal government practice).

The common-benefit doctrine would not apply here. Because of the complaint's vagueness, it is hard to imagine exactly what kind of injunctive relief could follow a successful suit, but the relief would at most restrain GMAC from certain marketing practices. Such relief would in no wise benefit the "general public"; it would be a boon to only the relatively small number of consumers who purchase certain products from GMAC. If Alabama courts respect their precedents, then any award of attorneys' fees will be deducted from the plaintiffs' damages fund. Because of this conclusion about Alabama law, we leave for another case the

question of whether an attorneys' fee awarded as a discrete, but noncontractual and nonstatutory, element of recovery may be counted as a single sum toward the jurisdictional amount rather than allocated among the individual class members' amounts in controversy. *Cf. Coventry Sewage Assocs. v. Dworkin Realty Co.,* 71 F.3d 1, 3 n. 2 (1st Cir.1995) ("[A]lthough attorneys' fees usually will not constitute a portion of the amount in controversy, there is an exception where, as here, the fees are contractual."); *In re Abbott Labs.,* 51 F.3d 524, 526-27 (5th Cir.1995) (award of attorneys' fee against defendant under Louisiana statute is attributed only to the class representatives, and therefore can satisfy the jurisdictional amount in controversy); *Premier Indus. Corp. v. Texas Indus. Fastener Co.,* 450 F.2d 444, 447 (5th Cir.1971) ("[T]he value of attorney's fees [plaintiff] was entitled to recover under the Settlement Agreement ... is properly includable in determining the amount in controversy.").

The narrow question we answer now is thus only whether a fee to be deducted from a common fund may, if it exceeds $75,000, satisfy the amount-in-controversy requirement.

*b. The rule and its application.* Precedent compels us to answer this question "no." The rule of decision comes from a series of Supreme Court cases, dating back to at least 1854, interpreting "matter in controversy"[4] to permit aggregation of multiple plaintiffs' claims only when "plaintiffs [have] unite[d] to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969); *accord, Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973); *see, e.g., Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939); *Shields v. Thomas,* 58 U.S. (17 How.) 3, 5, 15 L.Ed. 93 (1854). Why we look to the value of each plaintiff's claim, rather than to the defendant's total exposure, is lost in the mists of antiquity; no Supreme Court case that this court has been able to locate explains the rationale behind this seemingly arbitrary rule. *See* 14B Charles A. Wright et al., Federal Practice & Procedure § 3704, at 127 (3d ed. 1998) ("The traditional principles in this area have evolved haphazardly and with little reasoning. They serve no apparent policy...."). But a rule it is, and it applies here. True, the Supreme Court

---

[4]28 U.S.C. § 1332(a).

cases have used this rule only to determine if joint plaintiffs may aggregate the *entire* value of their claims. But this circuit has extended the application of the "single title or right" principle to address the aggregation of *discrete portions* of each plaintiff's claim for relief. *See Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1358 n. 11 (11th Cir.1996) (holding that punitive damages are aggregable because they represent an undivided interest in punishment and deterrence).

A common-fund attorneys' fee, we conclude, does not represent a "single title or right" of the plaintiffs, at least in the two ways it can be reasonably characterized. The first reasonable characterization is to view the fee as part of the compensatory damage award. It is indeed measured by the size of the damages award, and it does not independently affect the size of the controversy. Under this view, the attorneys' fee must be treated as "transparent," and its treatment for diversity-jurisdiction purposes must be identical to that of damages. When, as here, the damages claimed are purely compensatory, the attorneys' fees are no more aggregable than the compensatory damages would be.

Alternatively, even if we accept the defendant's invitation to view the fee as a lump sum collectively benefitting the plaintiff class, the common-fund fee does not represent a "right" of the plaintiffs. Facially, we could perhaps consider the fee as a collective debt of the plaintiff class, incurred in common in pursuit of the plaintiffs' recovery, that the defendants discharge to the plaintiffs' benefit. But that would not make sense in the common-fund context. After all, we are not dealing with attorneys who, as plaintiffs' "agents" in the common sense of the word, could be expected to seek attorneys' fees from their clients. Indeed, most of the clients involved will never meet their attorneys. Rather, the lawyers are "entrepreneurs" who take a case in the expectation of making money from it. Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform,* 58 U. Chi. L.Rev. 1, 3 (1991); John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions,* 86 Colum. L.Rev. 669, 677 (1986) (both identifying the plaintiffs' attorney in class actions as an independent entrepreneur rather than an agent). Indeed, the common-fund fee, which is most likely a matter solely for the

court and the plaintiffs' lawyers (or the defendant and the plaintiffs' lawyers, in the case of settlement), is often calculated without representation of the plaintiffs' interests. *See Edelman & Combs v. Law,* 663 So.2d 957, 959 (Ala.1995) (observing that class lawyers have an inherent conflict of interest with members of the class over fees). For these reasons, we cannot deem the attorneys' fee to be a collective benefit for the plaintiffs, who have been excused from a debt at the defendant's expense. Rather, the fees directly compensate the lawyers who have acted independently as "private attorneys general." In short, the common-fund attorneys' fee does not represent a collective interest of the plaintiff class, and it is not aggregable.

*c. Apologia.* We acknowledge that this case and its kin present an anomaly in our law. An important historical justification for diversity jurisdiction is the reassurance of fairness and competence that a federal court can supply to an out-ofstate defendant facing suit in state court.[5] GMAC is an out-of-state corporate defendant facing a multimillion-dollar judgment—possibly tens or hundreds of millions, once the plaintiffs have waited out the one-year removal window[6] and amend their complaint to seek punitive damages explicitly—in a state court system that has on occasion produced gigantic awards against out-of-state corporate defendants. *See, e.g., BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 1593, 134 L.Ed.2d 809 (1996) ($4 million punitive damage verdict for failing to disclose that new car had been repainted by the manufacturer); Jeff Bailey, *Whirlpool Ordered to Pay $581 Million in Alabama Satellite-Dish Finance Case,* Wall St. J., May 11, 1999, at A3 ("The decision ... is believed to be the largest punitive

---

[5]*See, e.g., Barrow S.S. Co. v. Kane,* 170 U.S. 100, 111, 18 S.Ct. 526, 530, 42 L.Ed. 964 (1898) ("The object of the provisions of the constitution and statutes of the United States in conferring upon the circuit courts of the United States jurisdiction of controversies between citizens of different States of the Union ... was to secure a tribunal presumed to be more impartial than a court of the state in which one litigant resides."); The Federalist No. 80, at 537-38 (Alexander Hamilton) (Jacob E. Cooke, ed. 1961) ("[I]n order to the inviolable maintenance of that equality of privileges and immunities to which the citizens of the union will be entitled, the national judiciary ought to preside in all cases in which one state or its citizens are opposed to another state or its citizens. To secure the full effect of so fundamental a provision against all evasion and subterfuge, it is necessary that its construction should be committed to that tribunal which, having no local attachments, will be likely to be impartial between the different states and their citizens, and which, owing its official existence to the union, will never be likely to feel any bias inauspicious to the principles on which it is founded.").

[6]*See* 28 U.S.C. § 1446(b).

damage award in Alabama, a state whose courts are among the most widely feared by corporate defendants.").
One would think that this case is exactly what those who espouse the historical justification for § 1332 would
have had in mind, and that this fact would somehow color the statute's interpretation.

Whatever the policy behind § 1332, however, the Supreme Court has deemed it irrelevant to
construing ambiguous terms like "matter in controversy." It would be consistent with this
nonresident-reassurance policy, for instance, to construe "matter in controversy" to mean the value of a case
from a removing defendant's perspective.[7] But while the Supreme Court long ago flirted with the idea of
evaluating multiple claims from the defendant's perspective, *see Shields,* 58 U.S. (17 How.), at 5,[8] it has since
rejected that notion, as *Snyder* and *Zahn* confirm. Those cases look at the "matter in controversy" solely
through each plaintiff's eyes, even though the defendant may be looking at a much larger sum. *See Zahn,* 414
U.S. at 295, 94 S.Ct. at 509; *Snyder,* 394 U.S. at 336, 89 S.Ct. at 1057. Thus, even though it may make sense
and be fair to a defendant to measure the case from its perspective, as well as the plaintiffs', the Supreme
Court has long since closed that door. By analogy, we are bound in our turn to reject any policy-based
arguments in deciding lesser questions about § 1332, including the one before us today.

*d. Mopping up.* Our conclusion does not end the diversity-jurisdiction dispute. GMAC has proposed
two additional ways that the amount in controversy could exceed $75,000 here. First, it argues that the
punitive damages waiver is impermissible. Second, it argues that the injunctive relief that the plaintiffs seek
is unitary and therefore aggregable. Because the district court found the amount in controversy satisfied by

---

[7]*See* Wright et al., *supra,* § 3705, at 180-81 ("This is one situation in which it might have been useful
to employ the defendant-viewpoint rule in determining the amount in controversy. The policy goal of
insuring that the federal courts do not 'fritter away their time in the trial of petty controversies' still would
be safeguarded, since the potential liability to the defendant clearly is not insubstantial in almost all class
actions despite the small size of the claims of individual class members.") (quoting S.Rep. No. 85-1830,
at 3-4 (1958), U.S. Code Cong. & Admin. News at 3099, 3101).

[8]"So far as the [defendant] is concerned, the entire sum found due by the Kentucky court is in dispute.
He disputes the validity of that decree, and denies his obligation to pay any part of the money. And if the
[plaintiffs] maintain their bill, he will be made liable to pay the whole amount decreed to them. This is
the controversy on his part; and the amount exceeds two thousand dollars."

the possibility of a common-fund attorneys' fee, it did not reach these alternative grounds. We thus will leave these issues for the district court to address in the first instance on remand.

### 3. Conclusion

For the foregoing reasons, we vacate the district court's denial of the motion to remand and remand the for further proceedings.

VACATED AND REMANDED.

NANGLE, Senior District Judge, concurring:.

This District Judge concurs with his colleagues in this matter but under protest. The protest is not against the majority, who are two of the finest Circuit Judges in this country, but is instead against the antiquated, out-of-date judicial theories which force upon us the result reached in this case.

The case at hand is but one example of a growing trend in class action litigation in this country. Plaintiffs' attorneys are increasingly filing nationwide class actions in various state courts, carefully crafting the language in the petitions or complaints in order to avoid the amount in controversy requirement of the federal courts. Existing federal precedent, as so clearly articulated by the majority, mandates that this practice be permitted, although most of these cases in actuality will be disposed of through "coupon" or "paper" settlements.[1] Actual monetary compensation rarely reaches the class members. Concurrently, and perhaps coincidentally, such settlements are virtually always accompanied by munificent grants of or requests for attorneys' fees for class counsel.[2]

---

[1] These settlements typically involve the extension or expansion of an existing warranty or coupons for rebates on future purchases from defendants.

[2] *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.,* 55 F.3d 768 (3d Cir.1995) (discussing settlement involving relief of rebate coupons on future truck purchases for the class and $9.5 million in attorneys' fees); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 981 F.Supp. 969 (E.D.La.1997) (rejecting proposed settlement involving "utility vehicle package" of safety materials for class and $6 million in fees for attorneys); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297 (N.D.Ga.1993) (approving proposed settlement which included discount travel certificates for class and over $14 million in attorneys fees); *In re Cuisinart Food Processor Antitrust Litig.* (D.Conn. Oct. 24, 1983) (approving settlement giving discount coupon on future purchases to class and $600,000 in attorneys' fees). Just recently, a Cook County class action case was settled by sending three golf balls to each member of the class, with significant attorneys' fees for the plaintiffs' attorneys. Jerry Heaster, *Enough Already with the Lawsuits,* Kan. City Star, July 10, 1999, at C1.

The instant case is virtually indistinguishable from the types of cases that result in coupon settlements. The plaintiffs allege fraud in the sale of an extended warranty plan for their GM vehicles costing $685 per policy. The lead plaintiffs in the instant case purport to waive all punitive damages and to limit compensatory damages to $75,000 per class member. Even if this waiver were effective, the reality of the situation is that plaintiffs will likely seek to amend their complaint and seek greater amounts of damages after the one year removal window has closed. 28 U.S.C. § 1446(b). I make no comments on the merits of this case. But, if it reaches the trial stage, I am willing to predict that it will be settled. Facing the possibility of an Alabama jury which occasionally brings in "gigantic awards" in cases of this sort (as pointed out by the majority),[3] defendants in this case will be under extreme pressure to settle with the only potential obstacle to settlement being plaintiffs' attorneys fees. Thus, the stage is set for a coupon settlement, with the only cash involved flowing directly to plaintiffs' attorneys. And that cash will far exceed $75,000.

Consequently, although the majority's opinion correctly states and analyzes the law as it currently stands, this Judge is of the opinion that the present case law does not adequately accommodate the reality of modern class action litigation and settlements. The amount in controversy doctrine, in particular the rules concerning aggregation, should provide for the inclusion of the prospective attorneys' fees being sought. In many such cases, that is the true "amount in controversy." Under the current state of the law, however, this Judge has no choice but to concur in the opinion of his esteemed colleagues.

---

[3]*BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (striking down $4 million dollar punitive damage award in Alabama paint damage case); Margaret Cronin Fisk, *Jurors' Satellite Signal: $581M,* Nat'l L.J., May 24, 1999, at B5 (citing *Carlisle v. Whirlpool Fin. Nat'l Bank,* No. 97-068 (Al. Cir. Ct., Hale Cty.) (awarding $581 million in damages for consumer fraud in the sale and financing of two television satellite dishes)).