Ralph C. DARDEN, Otis Lee Ivory, and Cora J. Ivory, and all others similarly situated, Plaintiffs-Counter-Defendants-Appellants,

v.

FORD CONSUMER FINANCE COMPANY, INC., a Georgia Corporation and Associates Financial Life Insurance Company, a Foreign Corporation, Defendants-Counter-Claimants-Appellees.

No. 98-9412.

United States Court of Appeals,

Eleventh Circuit.

Jan. 12, 2000.

Appeal from the United States District Court for the Northern District of Georgia. (No. 97-03557-1-CV-JOF), J.Owen Forrester, Judge.

Before BIRCH and HULL, Circuit Judges, and HODGES[*], Senior District Judge.

HULL, Circuit Judge:

Appellants-Plaintiffs Ralph C. Darden, Otis Lee Ivory, and Cora J. Ivory brought this class action in state court against Appellees-Defendants, Ford Consumer Finance Company, Inc. and Associates Financial Life Insurance Company, Inc., for Georgia Insurance Code violations by selling credit life insurance for fifteen-year loans. After Defendants' removal to federal court, Plaintiffs moved to remand this case for lack of subject matter jurisdiction. Plaintiffs now appeal the district court's denial of their motion to remand and dismissal of their complaint without prejudice for failure to exhaust administrative remedies. After review, we find that the district court lacked subject matter jurisdiction over Plaintiffs' class action. Thus, we vacate the district court's dismissal of the complaint and remand this case to the district court for it to remand this case to the Superior Court of Fulton County, Georgia.

I. FACTUAL AND PROCEDURAL BACKGROUND

As Georgia residents, Plaintiffs Ralph C. Darden, Otis Lee Ivory and Cora J. Ivory ("Plaintiffs") purchased credit life insurance from the Defendant, Associates Financial Life Insurance Company ("AFLIC"),

---

[*]Honorable William Terrell Hodges, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

a Tennessee corporation with its principal place of business in Texas. Plaintiffs purchased the insurance in connection with their fifteen-year loans obtained from Defendant Ford Consumer Finance Company ("Ford"), a New York corporation with its principal place of business in Texas. Darden's loan agreement with Ford financed $62,783.10 with 13.4% interest per annum for fifteen years. A $3,584.80 premium was charged for credit life insurance with a ten-year term and added into the principal amount borrowed. Thus, through Ford, Darden paid the premium in full to AFLIC.

Similarly, the Ivorys' loan agreement with Ford financed $56,086.24 with 15.1% interest per annum for fifteen years. A $4,692.74 premium was charged for credit life insurance with a ten-year term and added into the principal amount borrowed. Thus, through Ford, the Ivorys paid the premium in full to AFLIC.

Plaintiffs contend that the Defendants violated Georgia law by AFLIC's selling and Ford's financing credit life insurance for fifteen-year loans without the necessary authorizations or licenses from the Georgia Department of Insurance. *See* Ga.Code. Ann. § 33-31-2(c). Plaintiffs' complaint contains four counts: (a) Count One for breach of legal and private duty; (b) Count Two for money had and received, (c) Count Three for conversion, and (d) Count Four for violation of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"). Although requesting damages in all counts, Plaintiffs stipulated that their damages will not exceed $75,000 exclusive of interest, costs, and attorneys' fees. In Count Four, Plaintiffs also seek to recover attorneys' fees under Georgia's RICO statute, Ga.Code. Ann. § 16-14-6(c).

Plaintiffs filed suit in the Superior Court of Fulton County, Georgia. Defendants moved to dismiss and simultaneously removed this case to federal court alleging diversity jurisdiction. Plaintiffs then moved to remand to state court, asserting that the amount in controversy did not exceed $75,000. Defendants opposed the remand motion, contending that the attorneys' fees sought by Plaintiffs and potential members of the putative class may be aggregated to satisfy the jurisdictional amount-in-controversy requirement.

The district court denied Plaintiffs' motion to remand, granted Defendants' motion to dismiss based on Plaintiffs' failure to exhaust administrative remedies, and denied Plaintiffs' motion for class certification as moot. Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

The issue of whether the district court had subject matter jurisdiction over Plaintiffs' complaint is a question of law subject to *de novo* review. *Mutual Assurance, Inc. v. United States,* 56 F.3d 1353, 1355 (11th Cir.1995). The district court's decision to dismiss Plaintiffs' claims for failure to exhaust administrative remedies involves the interpretation and application of the Georgia Insurance Code, Ga.Code. Ann. § 33-2-17, and we review *de novo* questions of statutory interpretation. *Gonzalez v. McNary,* 980 F.2d 1418, 1419 (11th Cir.1993).

## III. DISCUSSION

A.       Subject Matter Jurisdiction

Several well-established principles frame and inform the jurisdiction issue in this case. Removal jurisdiction exists only when the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a); *Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2051, 141 L.Ed.2d 364 (1998); *Davis v. Carl Cannon Chevrolet-Olds, Inc.* 182 F.3d 792, 794 (11th Cir.1999). Original jurisdiction may be based on complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a).[1] Neither party disputes the existence of complete diversity of the parties' citizenship. Therefore, the only jurisdictional issue is whether the amount in controversy exceeds $75,000.

This issue is further narrowed because all Plaintiffs stipulate that each individual class member will neither request nor accept damages in excess of $75,000, exclusive of interests, costs and attorneys' fees. Furthermore, the claims for compensatory damages of the individual Plaintiffs here cannot be aggregated to establish the required amount in controversy. *Snyder v. Harris,* 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (upholding "[t]he doctrine that separate and distinct claims could not be aggregated"); *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Davis,* 182 F.3d at 794

---

[1]"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States...." 28 U.S.C. § 1332(a).

("[T]he compensatory damage claims of individual class members may not be aggregated to satisfy the amount [in controversy]"). At least one individual plaintiff in a class action must have a damage claim greater than $75,000 for a federal court to have diversity jurisdiction over the case. *Zahn,* 414 U.S. at 299, 94 S.Ct. 505 ("[T]he federal court was without jurisdiction where none of the plaintiffs presented a claim of the requisite size"). Furthermore, no one asserts that any individual Plaintiff's damage claim, added to that individual Plaintiff's share of attorneys' fees under the RICO statute would be enough to satisfy the amount in controversy.[2] Thus, the sole jurisdictional issue left for this Court to decide is whether all of the Plaintiffs' shares of any potential attorneys' fees awarded under Georgia's RICO statute may be aggregated to satisfy the amount-in-controversy requirement for diversity jurisdiction.

To help us answer that question, we first review the general rules regarding when aggregation is permissible to satisfy the jurisdictional amount-in-controversy requirement. In *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court held that aggregation is permissible to meet the amount-in-controversy requirement where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. 1053. *See also Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Shields v. Thomas,* 58 U.S. 3, 5, 17 How. 3, 15 L.Ed. 93 (1854); *Davis v. Carl Cannon Chevrolet-Olds, Inc.,* 182 F.3d 792, 796 (11th Cir.1999); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996). This Court has held that "[t]he corollary" to this holding "is that 'separate and distinct' claims may not be aggregated to satisfy the jurisdictional requirement." *Tapscott,* 77 F.3d at 1357 (11th Cir.1996) (citing *Snyder,* 394 U.S. at 336, 89 S.Ct. 1053).

While the Supreme Court has relied on this rule only to determine if joint plaintiffs may aggregate the entire value of their claims, "this circuit has extended the application of the 'single title or right' principle to address the aggregation of discrete portions of each plaintiff's claim for relief." *Davis,* 182 F.3d at 796;

---

[2]For example, the allegedly illegal premium charged to Plaintiff Darden was only $3,584.80. Even combining the interest, treble damages and Darden's individual share of reasonable attorneys' fees under the RICO statute, the amount will not come close to approaching the $75,000 amount-in-controversy requirement.

*see also Tapscott,* 77 F.3d at 1358, n. 11. On two occasions, this Court has examined whether discrete portions of each plaintiff's claim to relief can be aggregated for purposes of satisfying the jurisdictional amount-in-controversy requirement.

First, in *Tapscott,* this circuit addressed whether punitive damages sought in a putative class action may be aggregated to satisfy the amount-in-controversy requirement. Although the Plaintiffs here have not sued for punitive damages, the discussion of aggregation in *Tapscott* informs our analysis here. In *Tapscott,* this Court determined that the nature and purpose of punitive damages under Alabama law is "to deter wrongful conduct and punish those responsible." 77 F.3d at 1358 (citing *Reserve Nat'l Ins. Co. v. Crowell,* 614 So.2d 1005, 1009 (Ala.1993)). Thus, this Court also found under Alabama law (a) that "[a]n injured party is not entitled to punitive damages as a matter of right," (b) that the "state and not the victim is considered the true party plaintiff because punitive damages do not compensate a victim for loss but serve to punish and deter," and (c) that "Alabama punitive damages are awarded for the public benefit—the collective good." *Id.* (citing *Maryland Cas. Co. v. Tiffin,* 537 So.2d 469, 471 (Ala.1988)). In light of these findings, this Court held in *Tapscott* that "[t]he punitive damages sought in [that] case are a single collective right in which the putative class has a common and undivided interest; the failure of one plaintiff's claim will increase the share of successful plaintiffs." *Id.* at 1359. Therefore, this Court concluded that "punitive damages in [that] class action suit may be considered in the aggregate when determining the amount in controversy for jurisdictional purposes." *Id.* Nevertheless, this Court cautioned in *Tapscott* that "[w]hile the facts in this case result in an aggregation of punitive damages, other factual situations may dictate that punitive damages are non-aggregable." *Id.*

Subsequently in *Davis v. Carl Cannon Chevrolet-Olds, Inc.,* 182 F.3d 792 (11th Cir.1999), this Court examined whether attorneys' fees under Alabama law may be aggregated in a putative class action to satisfy the amount-in-controversy requirement. This Court first found that under Alabama law the plaintiffs in the putative class would not be able to recover attorneys' fees as a separate, discrete element of recovery and that any award of attorneys' fees would have to be deducted from the plaintiffs' damage fund. *Davis,* 182 F.3d

at 795. Therefore the narrow issue in *Davis* was "whether a fee to be deducted from a common fund may, if it exceeds $75,000, satisfy the amount-in-controversy requirement." *Id.* at 796. Similarly to *Tapscott,* this Court's inquiry in *Davis* focused on whether or not an attorneys' fees award deducted from a common fund represented a "single title or right." *Davis,* 182 F.3d at 796. Once again, we looked to the purpose and nature of the award in question. In doing so, this Court noticed that the first reasonable characterization of a common-fund attorneys' fee is "to view the fee as part of the compensatory damage award." *Id.* If the damages claimed were purely compensatory, the attorneys' fees could be no more aggregable than other compensatory damages. Alternatively, if the fee is viewed "as a lump sum collectively benefitting the plaintiff class, the common-fund fee does not represent a 'right' of the plaintiffs." *Id.*

Ultimately, this Court found in *Davis* that "the common-fund fee ... is most likely a matter solely for the court and the plaintiffs' lawyers [and] ... is often calculated without representation of the plaintiffs' interest." *Id.* at 797. Based on this analysis, this Court held that common-fund attorneys' fees awarded under Alabama common law are not "a collective benefit for the plaintiffs, who have been excused from a debt at the defendant's expense," but instead "directly compensate the lawyers who have acted independently as 'private attorneys general.' " *Id.* Therefore, this Court in *Davis* concluded, "[i]n short, the common-fund attorneys' fee does not represent a collective interest of the plaintiff class, and it is not aggregable." *Id.*[3]

B.      Georgia's RICO Statute

Against this background, we now examine whether the attorneys' fees recoverable under Georgia's RICO statute, Ga.Code. Ann. § 16-14-6(c), may be aggregated to satisfy the amount-in-controversy requirement. As in *Tapscott* and *Davis,* this Court's inquiry focuses on whether an attorneys' fee award under the applicable state law represents a single title or right in which all plaintiffs have a common and undivided interest or a separate and distinct claim of each plaintiff. To determine this, we look to Georgia law and the nature and purpose of the attorneys' fees award under Georgia's RICO statute.

Georgia's RICO statute provides that "any person who is injured" shall recover attorneys' fees as

---

[3]*Davis* was not decided until July 26, 1999, which was after the learned district judge's order, dated September 30, 1998, denying the motion to remand and dismissing this case.

follows:

> Any person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. The defendant or any injured person may demand a trial by jury in any civil action brought pursuant to this Code section.

Ga.Code. Ann. § 16-14-6(c). This statute gives each individual plaintiff in a putative class the right to recover attorneys' fees in the case. Thus, the plain language of section 16-14-6(c) makes it clear that the statutory award of attorneys' fees represents a separate and distinct interest awarded to compensate each injured plaintiff individually.[4]

Similarly, Georgia case law provides that the purpose and nature of statutory awards of attorneys' fees under Georgia law is to compensate the individual injured plaintiff. In *City of Warner Robins v. Holt,* 220 Ga.App. 794, 470 S.E.2d 238 (1996), the Georgia Court of Appeals expressly stated that the purpose of statutory attorneys' fees is not to punish or penalize a defendant but to compensate the injured party, as follows:

> Though awards of litigation expenses and attorney fees may often have a somewhat punitive effect on the party against whom they are awarded, to punish or penalize is not their purpose. Rather, in those limited circumstances under which such awards are authorized by law, the purpose is to compensate an injured party, in order that such parties are not further injured by the cost incurred as a result of the necessity of seeking legal redress for their legitimate grievances.

*City of Warner Robins,* 470 S.E.2d at 240. *See also F.N. Roberts Pest Control Co. v. McDonald,* 132 Ga.App. 257, 208 S.E.2d 13, 16 (1974); *Busbee v. Sellers,* 71 Ga.App. 26, 29 S.E.2d 710, 711-12 (1944). More specifically, the Georgia Supreme Court has stated that the purpose of the award of attorneys' fees under Georgia's RICO statute is to compensate civil plaintiffs. *Dee v. Sweet,* 268 Ga. 346, 489 S.E.2d 823, 825 (1997). In *Dee,* the Georgia Supreme Court noted that section 16-14-6(c) "promotes [the] legislative purpose

---

[4]Defendants contend that we should adopt the analysis of the Fifth Circuit in *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995) and permit the aggregation of attorneys' fees for jurisdictional purposes in this case. Defendants reliance on *In re Abbott Laboratories* is unavailing. In *Abbott,* the court aggregated attorneys' fees for jurisdictional purposes because the Louisiana statute in question specifically authorized awards of attorneys' fees to the "class representative." *See In re Abbott Laboratories,* 51 F.3d at 526 ("The plain text of the first sentence of [Article] 595 awards the fees to the 'representative parties.' "). In contrast, Georgia's RICO statute does not contain this class language but refers to the individual person who is injured.

[of the Georgia RICO statute] in that it provides compensation to civil plaintiffs who have successfully established that they have been injured by a defendant's RICO violations by including in the amount recoverable those attorney fees and costs of investigation and litigation reasonably incurred by plaintiffs in the trial and appellate courts." *Id.*

After review, we hold that each Plaintiff's share of the attorneys' fees recoverable under Georgia's RICO statute may not be aggregated to satisfy the amount-in-controversy requirement because under Georgia law each individual Plaintiff has a separate and distinct statutory right or claim to recover those attorneys' fees, and Georgia law provides that those fees are to compensate the injured Plaintiff. The Plaintiffs here are joining to enforce their individual rights to recover attorneys' fees as part of their compensatory damages; they are not joining to enforce a single right in which they have a common and undivided interest and are not seeking to deduct sums as attorneys' fees from a common fund. Punitive damages in *Tapscott* furthered the collective interest in deterrence and punishment; in contrast, the purpose of attorneys' fee awards under Georgia's RICO statute law is to compensate the injured party. Therefore, the attorneys' fees here may not be aggregated. *See Davis,* 182 F.3d at 796 ("When, as here, the damages claimed are purely compensatory, the attorney' fees are no more aggregable than the compensatory damages would be.").

In light of this holding, Defendants' second argument that Plaintiffs failed to exhaust administrative remedies is rendered moot. Thus we do not address this issue.

## IV. CONCLUSION

We vacate the district court's order, dated September 30, 1998, denying Plaintiffs' motion to remand and granting Defendants' motion to dismiss and remand this case to the district court for it to remand this case to the Superior Court of Fulton County, Georgia.

VACATED AND REMANDED.